STEVENS ID THEFT PREVENTION ACT PASSES COMMERCE COMMITTEE States News Service April 25, 2007 Wednesday

14 of 257 DOCUMENTS

Copyright 2007 States News Service
States News Service

April 25, 2007 Wednesday

LENGTH: 351 words

HEADLINE: STEVENS ID THEFT PREVENTION ACT PASSES COMMERCE COMMITTEE

BYLINE: States News Service

DATELINE: WASHINGTON

BODY:

The following information was released by Senate Committee on Commerce, Science and Transportation:

The Senate Committee on Commerce, Science and Transportation today passed S. 1178 the "Identity Theft Prevention Act." Committee Vice Chairman Senator Ted Stevens (R-Alaska) introduced the legislation and it is cosponsored by Commerce Committee Chairman Daniel Inouye (D-Hawaii), Senator Gordon Smith (R-Ore.) and Senator Mark Pryor (D-Ark.) and Senator Bill Nelson (D-FL). This bill would strengthen information safeguards and ensure notification to consumers whose sensitive personal information has been acquired without authorization. The bill would also direct the Federal Trade Commission (FTC) to enforce rules to protect such information. Under the bill, consumers would be able to freeze their credit for a reasonable fee to protect themselves from identity theft. The bill now moves to the Senate where it awaits consideration.

"ID theft is a growing problem that plagues Americans in the far reaches of our nation and everywhere in between," said Senator Stevens. "Studies of identity theft show that Alaskans are particularly susceptible to this criminal activity. It is time for Congress to act. We must take steps to help people protect themselves. I urge the Senate to take up this bill, which has received broad bipartisan support, and pass it quickly."

Identity theft has risen dramatically nationwide over the past decade and the FTC estimates that each year nearly 9 million Americans - or roughly 4.6 percent of the domestic adult population - are victimized by identity thieves. The FTC indicates that physical and online identity theft accounted for 40 percent of the more than 616,000 consumer fraud complaints filed last year with the agency. The costs associated with identity theft are enormous. In 2006, it is estimated that the losses to businesses and financial institutions due to identity theft totaled $52.6 billion, and the out-of-pocket losses to consumers totaled $5 billion, which does not take into account the average 300 hours spent by each victim to restore their good name.

LOAD-DATE: April 26, 2007


EXHIBIT
A

Identity Theft -- Unplugged --- Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way
The Wall Street Journal October 8, 2005 Saturday

Copyright 2005 Factiva, a Dow Jones and Reuters Company
All Rights Reserved

factiva.

(Copyright (c) 2005, Dow Jones & Company, Inc.)

## THE WALL STREET JOURNAL.
The Wall Street Journal

October 8, 2005 Saturday

SECTION: Pg. B1

LENGTH: 1438 words

HEADLINE: Identity Theft -- Unplugged --- Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way

BYLINE: By Robin Sidel

BODY:

WORRIED THAT shadowy gangs of Russian hackers are breaking into computer networks, stealing your financial secrets? Don't lose too much sleep over it.

But you might want to hide your checkbook when friends and relatives come visit your home.

Despite a series of alarming reports in recent months about security breaches that have made personal data potentially vulnerable to crooks -- such as the one at credit-card processor CardSystems Solutions Inc. affecting 40 million credit-card accounts -- most bank-related crimes remain stubbornly low-tech. They range from simple forgery of a check, to unauthorized credit-card use, to Dumpster-diving, which is when someone plucks a bank statement or credit-card bill from your garbage.

And the perpetrator probably may not be a stranger.

According to one recent study, by Javelin Strategy & Research, a consulting firm in Pleasanton, Calif., in 26% of all cases the fraud victims knew the person who had misused their personal information. (Typically it was a family member, friend or neighbor, or in-home employee.) In addition, as much as 50% of debit-card fraud occurs when a card is snagged by a family member or friend who knows the card's personal-identification number, according to a recent report from TowerGroup, a unit of MasterCard International Inc.

The term "identity theft" is often used loosely to describe a wide array of crimes. But true identity theft occurs when someone uses stolen information to create a new form of identity, such as opening a new credit-card account under the victim's name. That differs significantly from other kinds of bank fraud, such as when a criminal uses a stolen ATM card to get cash out of a teller machine.

Whether it's full-blown ID theft or small-scale fraud, even in cases where the criminal is a stranger, it's almost never a case of sophisticated computer hacking. Although 75% of all households use the Internet and 65% of those do some online banking, "most criminals obtain personal information through traditional rather than electronic channels," according to the Javelin study. Some 29% of victims surveyed said their personal information was obtained through a lost or stolen wallet, checkbook or credit card.

According to the study, the bulk of the rest were attributed to friends and relatives, corrupt employees, stolen mail, Dumpster-diving, and computer spyware. Computer viruses or hackers accounted for only 2.2% of incidents. While



Identity Theft -- Unplugged --- Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way
The Wall Street Journal October 8, 2005 Saturday

there has been a significant increase in the number of electronic attempts at identity theft, "the ones that are working are the traditional ones," said James Van Dyke, Javelin's president.

The Federal Trade Commission itself defines identity theft broadly, describing it as when someone possesses or uses a person's personal or financial information without their knowledge with the intent of committing fraud or other crimes.

The commission estimates that identity theft affects nearly 5% of the adult population, costing businesses and individuals a combined $53 billion annually. It received 246,000 reports of identity theft last year, nearly triple the number received in 2001. The FTC has attributed much of that rise to heightened awareness of the issue among consumers, making them more likely to report incidents as identity theft.

Overall, statistics on identity theft are spotty. For one thing, research has found that most victims of identity theft don't report the crime to police. In many cases, they aren't even certain that they are truly crime victims and don't know how the incident occurred. Banks increasingly alert authorities when incidents occur, but even those disclosures can be incomplete.

There are a number of steps individuals can take to protect themselves.

Many financial institutions are increasingly urging their clients to start using paper shredders at home. Household models can be relatively inexpensive, and they significantly reduce the chances that a criminal can find any useful personal information in the trash. Banks typically recommend shredding documents that contain account information, Social Security numbers, credit-card and ATM receipts and credit-card offers. Also, shred blank checks that sometimes come in the mail as part of a solicitation.

Another suggestion: Be particularly aware if credit-card bills or bank statements are missing from the mailbox. If a bill arrives more than two weeks late, the American Bankers Association suggests contacting the local post office to be sure it isn't being forwarded without the recipient's knowledge. Also check with the company where the bill originated.

It's also wise to avoid disclosing any personal information on forms or applications unless absolutely necessary, says Mike Cunningham, senior vice president in the credit-card fraud department at J.P. Morgan Chase & Co.

As an example, Mr. Cunningham says, he was recently filling out an application to be a coach on his son's neighborhood football team in Arizona, and the form asked for his social security number, driver's license number and other personal information. He declined to provide the information, because there was no way for him to know whether his personal information would be kept under lock and key.

"I just told the team mom that I didn't see why they needed it -- it was the perfect amount of information for an identity thief," he said. He got the job anyway.

The only organizations you're required to provide with your social security number are your employer and your financial institutions. (This is for tax purposes.) If anyone else asks -- say, a retailer -- you don't have to give it. The company can decline to provide the service, but it's worth asking what other identification they might accept instead.

Amid the proliferation of old-fashioned fraud, some financial institutions are fighting back by urging their customers to abandon paper statements altogether and instead view their accounts online. Among them is E*Trade Financial Corp., which says its online system is more secure than paper statements that can be stolen or copied. A spokeswoman declined to specify how much money the company will save by eliminating the printing and mailing of paper statements.

Banks are having a particularly tough time battling one of the oldest and most common kinds of crime: check fraud. Attempts of check fraud rose to $5.5 billion in 2003 from $4.3 billion in 2001, according to the American Bankers Association. The incidents resulted in losses of $677 million, representing a slight decline from $698 million in 2001; the trade group attributed the drop to better fraud-detection methods.

That slight decline isn't so reassuring to Lee Roberts, senior vice president at National Penn Bancshares Inc., a regional bank based in Boyertown, Pa. As recently as the past few weeks, the bank has been hit by a wave of incidents in which criminals have copied checks and then altered them for fraudulent use. That practice "has been around for seven or eight years," says Mr. Roberts. But as photocopiers and image-manipulation computer software become more sophisticated, he says, "they're getting better at it."

Identity Theft -- Unplugged -- Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way
The Wall Street Journal October 8, 2005 Saturday

## Battling Identity Theft

Despite all the buzz about high-tech online identity theft, most instances revolve around old-fashioned fraud such as forging a signature on a check. Here are steps for reducing the risk:

-- **Check up on yourself regularly**
Get a copy of your credit report every year from each of the major credit bureaus (TransUnion, Equifax, Experian) to make sure the records are accurate. Also, closely review all monthly bank and billing statements for discrepancies.

-- **Travel light**
Avoid carrying around credit-card or personal documents unless you really need them.

-- **Keep personal data under wraps**
Don't share personal ID numbers or passwords with anyone. Don't provide information over the phone or hand over personal data unless you know why it is needed. Keep a list of all account numbers in a secure place so that you have quick access if cards or documents get stolen or lost.

-- **Buy a shredder for the home**
Tear up or shred all credit-card receipts and all new-card offers that arrive in mail. Also destroy all documents that contain account numbers or other personal financial information.

-- **Check the mail**
Don't let mail sit in the mailbox for days on end. And don't place sensitive outgoing mail, such as bills, in your home mailbox to await collection. Instead, drop it in a collection box.

Sources: Federal Trade Commission, American Bankers Association

NOTES:
PUBLISHER: Dow Jones & Company, Inc.

LOAD-DATE: October 8, 2005

Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein PR Newswire March 6, 2003 Thursday

6 of 9 DOCUMENTS

Copyright 2003 PR Newswire Association, Inc.
PR Newswire

March 6, 2003 Thursday

SECTION: WASHINGTON DATELINE

DISTRIBUTION: TO BUSINESS AND NATIONAL EDITORS

LENGTH: 774 words

HEADLINE: Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein

DATELINE: WASHINGTON March 6

BODY:

At a press conference today on Capitol Hill with Senators Dianne Feinstein (D-CA), Judd Gregg (R-NH), Jon Corzine (D- NJ) and Patrick Leahy (D-VT), Visa USA CEO Carl Pascarella, announced Visa USA's new account truncation program to protect consumers from identity theft. The following are excerpts of Mr. Pascarella's remarks:

"I am here today to talk about the steps that Visa is taking to put identity theft protections in place. Visa USA and our Member financial institutions have a long history of using state of the art technology to further protect cardholder information. Visa was the first payments company to adopt a zero liability policy for unauthorized purchases, and we've continued this leadership role with Verified by Visa, which authenticates cardholders for Internet purchases, and our sophisticated neural networks that monitor spending anomalies.

"We have also implemented our Cardholder Information Security Program, or CISP, a set of 12 requirements for protecting cardholder data for which all Visa payment system participants need to comply. In fact, Visa is adding new resources to our auditing process to ensure any entity that touches a Visa transaction will be compliant with our Cardholder Information Security Program rules. The CISP 'Digital Dozen' was the first set of standards within the payments industry for protecting cardholder data and served as a best practices model by the G-8 conference on cyber-crime in Tokyo.

"Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. This is an added security measure for consumers that doesn't require any action by the cardholder. We are proud to be the first payments brand to announce such a move to protect cardholders' identities by restricting access to their account information on receipts.

"The first phase of this new policy goes into effect July 1, 2003 for all new terminals. I would like to add, however, that even before this policy goes into effect, many merchants have already voluntarily begun truncating receipts, thanks to groundwork that we began together several years ago.

"Receipt truncation is good news for consumers, and bad news for identity thieves. Identity thieves thrive on discarded receipts and documents containing consumers' information such as payment account numbers, addresses, Social Security numbers, and more. Visa's new policy will protect consumers by limiting the information these thieves can access.

"Visa's new receipt truncation measure builds upon our other security measures I mentioned, zero liability cardholder protection, Verified by Visa, neural networks and the Cardholder Information Security Program.

"Our receipt truncation policy is the latest initiative in Visa's broader identity theft consumer protection effort. I can't go into the details at the moment, but we will be announcing a series of additional steps to combat identity theft and offer tools to consumers.


EXHIBIT
C

Page 18

Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein PR Newswire March 6, 2003 Thursday

"Visa is focused on maintaining the trust we have earned through our security leadership. Because there is no silver bullet to eliminate identity theft, we are constantly adding new layers of security to protect cardholders. As a result of these, and many other security measures, fraud within the Visa system has fallen to an all-time low of just 7 cents per $100 transacted.

"Visa USA is pleased to be working with Senator Feinstein, and the other senators here today in the fight to protect consumers from identity theft. We look forward to continuing our joint efforts; after all, we share the same goals."

About Visa

Visa is the world's leading payment brand and largest consumer payment system, enabling banks to provide their consumer and merchant customers with a wide variety of payment alternatives. Nearly 21,000 financial institutions worldwide rely on Visa's processing system, VisaNet, to facilitate $2.4 trillion in annual transaction volume with virtually 100 percent reliability. Consumers in more than 150 countries carry more than one billion Visa-branded cards, accepted at 30 million locations around the world. Within the United States, nearly 14,000 financial institutions issue more than 385 million Visa cards, accounting for $970 billion in annual transaction volume. Visa offers a trusted, reliable and convenient way to access and mobilize financial resources -- anytime, anywhere, anyway. For more information about Visa, please visit http://www.visa.com .

SOURCE Visa USA

CONTACT: Adam Bromberg, +1-703-683-5004, ext. 102, for Visa USA

URL: http://www.prnewswire.com

LOAD-DATE: March 7, 2003

**VISA**

# Rules for Visa Merchants
## Card Acceptance and Chargeback Management Guidelines



# Transaction Receipt Requirements— Card-Present Merchants

The following are Visa requirements for all transaction receipts generated from electronic point-of-sale terminals (including cardholder-activated terminals).

## Electronic Point-of-sale Terminal Receipts



Merchant or member name and location, or the city and state of the Automated Dispensing Machine or Self-Service Terminal

Transaction Date

Merchant Location Code

Effective November 1, 2005, the payment brand used to complete the transaction must be identified on the cardholder's copy of the transaction receipt.

Authorization Code, if applicable, except for Express Payment Service Transactions.

Space for Cardholder Signature, except for:
- Transactions in which the PIN is an acceptable substitute for Cardholder signature
- Limited-Amount Terminal Transactions
- Self-Service Terminal Transactions
- Express Payment Service Transactions

Truncated Account Number Visa requires that all new electronic POS terminals provide account number truncation on transaction receipts. This means that only the last four digits of an account number should be printed on the customer's copy of the receipt.

In addition, the expiration date should not appear at all. Existing POS terminals must comply with these requirements by July 1, 2006. To ensure your POS terminals are properly set up for account number truncation, contact your merchant bank.

Transaction Amount

```
      XYZ SHOES
     1040 PARK ST
   ANYTOWN, CA 94501
  PHONE # (000)555-5555
  NOV 10, 2005   12:30PM

  MERCH ID:   08233004

  REF # : 003
  ACT # : ************5220
  EXP   : XX/XX
  CARD  : VISA
                    $21.69

  APPROVAL CODE:   035789
  TRAN ID: VGT7E7800815

  I AGREE TO PAY ABOVE
  TOTAL AMOUNT ACCORDING
  TO CARD ISSUER AGREEMENT

  X
  _____
        SIGNATURE

        THANK YOU
     CARDHOLDER COPY
```

Rules for Visa Merchants—Card Acceptance and Chargeback Management Guidelines
©2006 Visa U.S.A. Inc., all rights reserved, to be used solely for the purpose of providing Visa Card acceptance services or authorized persons in agreement with a Visa member/brand institution.



© 2006 Visa U.S.A., Inc.   VRM 08.12.06

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

STEPHEN CICILLINE JR.,                     )
individually and on behalf of others similarly )
situated,                                  )          Hon. Elaine E. Bucklo
      Plaintiff,                      )
                           )
                           )
v.                                         )          07-CV-2333
                           )
JEWEL FOOD STORES, INC.,                   )
d/b/a JEWEL-OSCO                           )
a New York Corporation,                    )
                           )
      Defendant.                      )

### AFFIRMATION OF DANIEL LYNCH IN SUPPORT OF PLAINTIFF STEPHEN CICILLINE JR'S RULE 23(g) MOTION FOR APPOINTMENT OF THE LAW OFFICES OF DANIEL LYNCH AND GISKAN, SOLOTAROFF & ANDERSON, LLP AS INTERIM CLASS COUNSEL

1.    I, Daniel Lynch, hereby affirm that the following statements to be true and correct to the best of my knowledge.

2.    Attached as Exhibit A are true and correct copies of the complaints filed in the actions entitled, *Batterson v. Jewel Food Stores, Inc.*, 07CV2375 (RWG/GSB) and *Iosello v. Jewel Food Stores, Inc., et al.*, 07CV2452 (RRP/GSB).

3.    Attached as Exhibit B are true and accurate copies of firm resumes for the Law Offices of Daniel Lynch and Giskan, Solotaroff, & Anderson, LLP, (collectively "Proposed Class Counsel").

4.    As set forth in Exhibit B and in Plaintiff's Motion, Proposed Class Counsel has extensive Class Action experience and would "fairly and adequately represent the interests of the class" as set forth in Federal Rule 23(g)(1)(B).



5.    Thus far, Proposed Class Counsel has done extensive work in identifying or investigating potential claims in the action and has other FACTA cases currently pending in the Northern District of Illinois.

6.    Proposed Class Counsel has extensive experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

7.    Proposed Class Counsel possesses superior knowledge of the applicable law.

8.    Proposed Class Counsel will commit all necessary resources to fairly representing the class.

9.    Morever, should Proposed Class Counsel be appointed Interim Class Counsel as sought, I affirm that we will work with the other firms in cooperation to ensure a fair and efficient division of labor and to avoid the duplication of assignments and efforts.


I, Daniel Lynch, declare under penalties of perjury of the United State that the forgoing representations are true and correct to the best of my knowledge and belief.

_____

# Exhibit A

KC **FILED**

APR 8 0 2007
APR 30 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JEFFREY BATTERSON., individually )
and on behalf of all others similarly situated, )
)
Plaintiff, )
)
v. )
)
JEWEL FOOD STORES, INC. )
Defendant. )

07CV2375
JUDGE GETTLEMAN
MAGISTRATE JUDGE BROWN

## COMPLAINT – CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

### INTRODUCTION

1.    Plaintiff Jeffrey Batterson brings this action to secure redress for the violation by Jewel Food Stores, Inc. of the Fair and Accurate Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681 et seq.

2.    The FTC has reported that in some instances "...identity theft results from thieves obtaining access to account numbers on credit cards receipts." *See* Prepared Statement of the Federal Trade Commission on Identify Theft and Social Security Numbers before the Subcommittee on Social Security of the House Ways and Means Committee, June 15, 2004.

3.    In order to protect consumers from identity theft. FACTA, 15 U.S.C. §1681c(g), provides:

   **No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

4.    Defendant Jewel Food Stores Inc. has willfully violated this law and failed to protect plaintiff and others against identity theft and credit card and debit card fraud by continuing to print

more than the last five digits of the card number and/or the expiration date on receipts provided to debit card and credit card cardholders transacting business with defendant.

5. Plaintiff brings this action to secure redress for defendant Jewel Food Stores, Inc. violation of 15 U.S.C. §§1681 *et seq.* Plaintiff seeks statutory damages, attorneys fees and costs.

### JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337, and 15 U.S.C. § 1681p.

7. Venue in this district is proper because defendant does business here.

### PARTIES

8. Plaintiff, Jeffrey Batterson is a resident of this district.

9. Defendant Jewel Food Stores, Inc. ("Jewel") is a New York corporation that dos business in Illinois. Its registered agent and office are CT Corporation System, 208 S. LaSalle, Ste. 804, Chicago, Illinois.

10. Defendant is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

### FACTS

11. On April 8, 2007, plaintiff received from Jewel at its store located at 13200 Village Green Drive, Huntley, Illinois a computer-generated cash register receipt which displayed his card expiration date.

### CLASS ALLEGATIONS

12. Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.P.23(a) and (b)(3).

2

13. The class is defined as all persons in Illinois to whom Jewel provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displays either (a) more than the last five digits of the person credit card or debit card number, and/or (b) the expiration date of the person's credit or debit card.

14. The class is so numerous that joinder of all individual members in one action would be impracticable.

15. On information and belief, there are over 100 persons in to whom Jewel provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displays either (a) more than the last five digits of the person credit or debit card number, and/or (b) the expiration date of the person's credit or debit card.

16. Plaintiff's claims are typical of the claims of the class members. All are based on the same legal theories and arise from the same unlawful and willful conduct.

17. There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

    a. Whether defendant has a practice of providing plaintiff and the class members with a sales or transaction receipt on which defendant printed more than the last five digits of the credit card or debit card and/or expiration date of the credit card or debit card;

    b. Whether defendant thereby violated FACTA;

    c. Whether Jewel's conduct was willful;

18. Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained experienced

3

counsel.

19.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible.

## VIOLATION ALLEGED

20.    Jewel violated 15 U.S.C. §1681c(g)(1), which provides that:

**No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number of the expiration date upon any receipt provided to the cardholder at the point of sale of the transaction.**

21.    With respect to machines that were first put into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

22.    With respect to machines that were in use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

23.    Jewel accepts credit cards and/or debit cards in the course of transacting business with persons such as plaintiff and the class members. In transacting such business, defendant uses cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

24.    After the effective date of the statute, Jewel, at the point of sale or transaction, provided plaintiff and each class member with one or more electronically printed receipts on each of which defendant printed more than the last five digits of the credit card or debit card number and/or printed the expiration date of the credit card or debit card.

25.    FACTA was enacted in 2003 and gave merchants who accept credit card and/or

4

debit cards three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

26.     Jewel knew or should have known the requirement concerning the truncation of credit and debit card numbers and prohibition on printing of expiration dates.

27.     On information and belief, VISA, MasterCard, the PCI Security Standards Council a consortium founded by VISA, MasterCard, Discover, American Express and JCB - companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed defendant about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and defendant's need to comply with the same.

28.     Most other retailers readily brought their credit card and debit card receipt printing process into compliance with FACTA by, for example, programming their card machines and devices to prevent them from printing more than the last five digits of the card number and/or the expiration date upon the receipts provided to the cardholders. Defendant could have readily done the same.

29.     Jewel willfully disregarded FACTA's requirements and continues to use cash registers or other machines or devices that print receipts in violation of FACTA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class members and against defendant Jewel Food Stores, Inc. as follows:

        a.     For statutory damages;

        b.     For attorney's fees, litigation expenses and costs;

        c.     For such other and further relief as the Court may deem proper.

5

Keith J. Keogh

Keith J. Keogh
Alexander H. Burke
LAW OFFICES OF KEITH J. KEOGH, LTD.
227 W. Monroe St., Suite 2000
Chicago, Illinois 60606
(312) 726-1092 (office)
(312) 726-1093 (fax)

**JURY DEMAND**

Plaintiff demands trial by jury.

Keith J. Keogh

6

**FILED** NF<sub>i</sub>

MAY 0 8 2007
5-2-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTOPHER IOSELLO,           )
individually and on behalf of a class,   )
                               )      07CV2452
          Plaintiff,           )      JUDGE PALLMEYER
                               )      MAGISTRATE JUDGE BROWN
     v.                        )
                               )
JEWEL FOOD STORES, INC.,       )
and DOES 1-10,                 )
                               )
          Defendants.          )

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.     Plaintiff Christopher Iosello brings this action to secure redress for the violation by Jewel Food Stores, Inc., of the Fair Credit Reporting Act ("FCRA"), as amended by the the Fair and Accurate Credit Transactions Act ("FACTA").

2.     One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

**No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

3.     The law gave merchants who accept credit cards or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006. Defendant Jewel Food Stores has willfully violated this law and failed to protect plaintiff, and others similarly situated, against identity theft, credit card fraud and debit card fraud by continuing to print more than the last five digits of the card number, or the expiration date,

1

or both, on receipts provided to debit card and credit card cardholders transacting business with defendant.

4.    Plaintiff brings this action against defendant based on defendant's violation of 15 U.S.C. §§1681 *et seq.*   Plaintiff seeks statutory damages, attorneys fees, and costs.

### JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. §1681p.

6.    Venue in this district is proper because defendant Jewel Food Stores, Inc. does business here.

### PARTIES

7.    Plaintiff, Christopher Iosello, is a resident of this district.

8.    Defendant Jewel Food Stores, Inc., is a New York corporation that does business in Illinois. Its registered agent and office are CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, Illinois.

9.    Defendant Jewel Food Stores, Inc. is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

10.    Defendants Does 1-10 are individual officers, directors, employees and agents of defendant Jewel Food Stores, Inc. who authorized, directed or participated in the violations of law complained of.

### FACTS

11.    On two occasions between April 20, 2007 and May 1, 2007, plaintiff received from Jewel Food Stores, Inc. a computer-generated receipt which displayed plaintiff's card

2

expiration date.

12.     On information and belief, it is possible for thieves to replicate a credit card number using the expiration date and the last four digits of the card number.

## CLASS ALLEGATIONS

13.     Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

14.     The class is defined as all persons to whom defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays either (a) more than the last five digits of the person's credit card or debit card number, and/or (b) the expiration date of the person's credit or debit card.

15.     The class is so numerous that joinder of all individual members in one action would be impracticable.

16.     There are over 100 persons to whom Jewel Food Stores, Inc. provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays either (a) more than the last five digits of the person's credit card or debit card number, and/or (b) the expiration date of the person's credit or debit card.

17.     Plaintiff's claims are typical of the claims of the class members. All are based on the same legal theories and arise from the same unlawful and willful conduct.

18.     There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

a.     Whether defendant Jewel Food Stores, Inc. had a practice of

3

providing customers with a sales or transaction receipt on which defendant Jewel Food Stores, Inc. printed more than the last five digits of the credit card or debit card or the expiration date of the credit card or debit card;

        b.     Whether defendant Jewel Food Stores, Inc. thereby violated FACTA;

        c.     Whether defendant's conduct was willful; and

        d.     Identification and involvement of the Doe defendants.

19.     Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained experienced counsel.

20.     A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible.

## VIOLATION ALLEGED

21.     Defendants violated 15 U.S.C. §1681c(g)(1), which provides that:

**. . . no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

22.     With respect to machines that were first put into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

23.     With respect to machines that were in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

4

24. Defendant Jewel Food Stores, Inc. accepts credit cards and/or debit cards in the course of transacting business with persons such as plaintiff and the class members. In transacting such business, defendant uses machines or devices that electronically print receipts for credit card and/or debit card transactions.

25. After the effective date of the statute, defendant Jewel Food Stores, Inc., at the point of sale or transaction, provided plaintiff and each class member with one or more electronically printed receipts on each of which defendant printed more than the last five digits of the credit card or debit card number and/or printed the expiration date of the credit card or debit card.

26. FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

27. On information and belief, defendant Jewel Food Stores, Inc. knew of the requirement concerning the truncation of credit and debit card numbers and prohibition on printing of expiration dates.

28. On information and belief, VISA, MasterCard, the PCI Security Standards Council — a consortium founded by VISA, MasterCard, Discover, American Express and JCB companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed defendant Jewel Food Stores, Inc. about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and defendant Jewel Food Stores, Inc. need to comply with the same.

29. The requirement was widely publicized among retailers.

5

30.     Most of defendant Jewel Food Stores, Inc. business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by, for example, programming their card machines and devices to prevent them from printing more than the last five digits of the card number and/or the expiration date upon the receipts provided to the cardholders. Defendant Jewel Food Stores, Inc. could have readily done the same.

31.     Defendants willfully disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class members and against defendants as follows:

a.      For statutory damages;

b.      For attorney's fees, litigation expenses and costs; and

c.      For such other and further relief as the Court may deem proper.


_____
Cathleen M. Combs

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Thomas E. Soule
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiff demands trial by jury.

_____
Cathleen M. Combs

T:\19718\Pleading\complaint.wpd

7

## NOTICE OF LIEN

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

_Cathleen M. Combs_

Cathleen M. Combs

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\19718\Pleading\complaint.wpd

8

# Exhibit B

# Law Offices of Daniel Lynch

### Firm Biography

The Law Offices of Daniel Lynch is a Chicago based litigation firm focusing its practice on complex commercial litigation, consumer fraud, anti-trust, trademark and unfair competition litigation, securities litigation, and real estate litigation, on behalf of plaintiffs in a variety of forms, including class actions.

DANIEL LYNCH graduated from the University of Colorado and the Northwestern University School of Law. He was admitted to practice in Colorado and the US District Court in the District of Colorado in 1988. In 1989 he was admitted in Illinois, U.S. District Court, Northern District of Illinois including Trial Bar and U.S. Court of Appeals, Seventh Circuit; in 1993 he was admitted to the U.S. District Court, Central District of Illinois; 1994, U.S. Court of Appeals, Eighth Circuit; 1998, U.S. Court of Appeals, Second Circuit; and in 2000, U.S. Court of Appeals, Tenth Circuit.

Dan served as lead counsel *Lowery v. McCaughtry*, a civil rights class action brought in the Western District of Wisconsin. Dan has also served class counsel in *Mirfasihi v. Fleet Mortgage*, Case No. 01 C 0722 in the Northern District of Illinois. He is actively litigating several other consumer fraud class actions throughout the country as class counsel, in addition to other FACTA cases currently pending within the Northern District of Illinois.

Prior to forming the Law Offices of Daniel Lynch, Dan spent 14 years at the Chicago Office of Jenner & Block (devoting a substantial portion of his practice to the defense of securities class action cases). After leaving Jenner & Block, Dan spent 3 years at the Chicago office of Cirignani, Heller, Harman & Lynch. Dan has been named an Illinois Super Lawyer for 2005, 2006, 2007, and has been given an "AV" rating by his peers in the Chicago Legal Community. His practice areas include Commercial Litigation; Class Actions; Trademark and Unfair Competition Litigation; Complex Litigation; Securities Litigation; Real Estate Litigation.

HENRY BASKERVILLE graduated from Boston College in 2001 and Loyola University Chicago School of Law in 2005, both *cum laude*. He was admitted in Illinois in 2005 and in the Northern District of Illinois in 2006.

Henry has served on a variety of consumer fraud class actions, in addition to other FACTA cases currently pending within the Northern District of Illinois. During law school he worked for two years as a Law Clerk for the City of Chicago Law Department before joining the Law Offices of Daniel Lynch as an Associate. At LODL Henry has concentrated his practice in the area of general commercial litigation, focusing on complex contract and business disputes, class action, and consumer fraud.

## GISKAN, SOLOTAROFF & ANDERSON, LLP

### Firm Biography

Giskan, Solotaroff & Anderson, LLP is a firm with significant experience in complex litigation involving consumer fraud, antitrust, and employment discrimination litigation in state and federal courts, on behalf of plaintiffs and often involving class actions.

OREN GISKAN is admitted to practice in the states of New York (1993) and Illinois (1990). He received his law degree from the University of Pennsylvania in 1990 and his Bachelor of Arts from the University of Chicago in 1986.

Mr. Giskan served as lead class counsel in Danielson v. Rockford Memorial Hospital, Circuit Court of Winnebago County Illinois, No. 01 L 139 (settlement of patient billing claims under the Illinois Consumer Fraud Act), and Truschel v. Juno Online Inc., Supreme Court of the State of New York, New York County, No. 01/602486 (settlement of consumer protection claims regarding failure to provide Internet service). He is actively litigating several other consumer fraud actions throughout the country as lead or class counsel against companies including Nokia, Inc., Yellow Book USA, and Fleet Mortgage Corp. Prior to forming the firm of Giskan & Solotaroff in October 2002, Mr. Giskan worked for the firms of Prongay & Borderud, the Law Offices of James V. Bashian, P.C. and Zwerling, Schachter & Zwerling, LLP, in New York, New York where he was actively involved as lead counsel for plaintiffs in many securities class action lawsuits including: Hal Bloomberg Trust v. Gencor Industries, Inc., M.D. Fla., 99-106-Civ-Orl; Kaplan v. Prins Recycling Corp., D.N.J., 96 Civ. 2444; In re Lady Luck Gaming Corporation Securities Litigation, D. Nev., CV-S-95-266-LDG (RLH); In re American Pacific Securities Litigation, D. Nev., CV-S-93-00576-PMP; and In re Foodmaker/Jack-in-the-Box Securities Litigation, W.D. Wash., No. C93-517WD. He also actively participated as one of the lead counsel in coordinated nationwide class actions against America Online Inc. regarding its deceptive billing practices.

From 1990-92, Mr. Giskan was an associate with Jenner & Block in Chicago, Illinois where he focused on securities and general commercial litigation.

JASON L. SOLOTAROFF is admitted to practice in the State of New York. He is a 1990 graduate of Columbia Law School where he was an Editor of the Columbia Law Review and a Harlan Fiske Stone Scholar. He graduated from the Johns Hopkins University with General Honors.

Mr. Solotaroff clerked for the Hon. Eugene H. Nickerson, United States District Court for the Eastern District of New York. Following the clerkship, Mr. Solotaroff was a Staff Attorney at the Legal Aid Society, Criminal Defense Division from 1991 to 1993. In 1993, he joined the Society's Federal Defender Division. As a federal defender, Mr. Solotaroff represented clients in a wide variety of matters including complex white-collar cases. Of the nine clients he represented in criminal trials, six were acquitted and one received a partial acquittal.

Mr. Solotaroff entered private practice in 1997. Since 1997, he has devoted a substantial part of his practice to the representation of plaintiffs in class action matters. Among the cases in which he has had substantial responsibility are consumer class actions against Juno Online Inc., Lincoln Security Life Insurance of New York, Verizon Communications, American Express and antitrust class actions against Abbott Laboratories, Bristol-Myers Squibb and Astrazeneca Inc. He also represents individuals in employment discrimination and criminal defense matters.

CATHERINE E. ANDERSON is admitted to practice in the States of New York and New Jersey. She received her law degree from New York University School of Law in 1995, where she was an editor of the Journal of International Law and Politics and a participant in the Human Rights Clinic. She graduated magna cum laude from Colgate University in 1992, where she was elected Phi Beta Kappa. Ms. Anderson has specialized in consumer fraud and securities class action litigation and has also represented plaintiffs in employment discrimination and ERISA actions.

Ms. Anderson has served as lead or co-lead counsel in consumer class actions against Fry's Electronics, Chase Mortgage, Dow Jones, Inc., Panasonic and Sieba, Ltd. In January 2007, Ms. Anderson settled the class action captioned Russo v. Whole Arts, et al., Supreme Court of the State of New York, County of New York, Index No. 03603037, alleging claims for breach of contract, deceptive conduct in violation of NY GBL § 349, breach of fiduciary duty and fraud on behalf of approximately 170 members of the Whole Arts Group Health Plan (the "Plan"). The class settlement resolved outstanding medical bills incurred by members of the Plan with a market value in excess of $700,000.

Prior to joining Giskan, Solotaroff & Anderson, LLP, Ms. Anderson was associated with the firm of Wolf Popper LLP, where she served as lead or co-lead counsel in the following class actions which obtained a substantial recovery for the class: Garcia v. General Motors Corp., Docket No. L-4394-95, Superior Court of New Jersey, Bergen County (obtaining a nationwide settlement of $19.5 million in cash on behalf of a consumer class comprised of 2.6 million owners of GM W-Body cars with allegedly defective braking systems); Whipple v. Happy Kids, Inc., Index No. 99-603371, IAS Part 10, Supreme Court of the State of New York, New York County (obtaining a settlement providing, among other things, an increase of $0.50 per share on behalf of the Happy Kids public shareholders in a revised buyout transaction); In re Segue Software, Inc., Sec. Litig., C.A. 99-10891-RGS, United States District Court, District of Massachusetts (obtaining a cash settlement of $1.25 million on behalf of a class of all persons who purchased the common stock of Segue Software, Inc. during the period July 14, 1998 through April 9, 1999); Jonas v. Aspec Technology, Inc., Lead Case No. CV775037, Superior Court of the State of California (obtaining a settlement with a $13 million cash component and a stock component of 1.75 million shares of the common stock of Aspec Technologies, Inc. for a class comprised of all persons who owned Aspec common stock during the period April 27, 1998 through June 30, 1998); In re Ugly Duckling Corp. Shareholders Derivative and Class Action, Consolidated C.A. No. 18843, Delaware Court of Chancery, New Castle County (obtaining an increase from $2.51 per share to $3.53 per share cash in going private transaction on behalf of a class comprised of the Company's minority shareholders, resulting in an aggregate cash benefit of more than $4.7 million).

## DECLARATION OF KEITH J. KEOGH

Keith J. Keogh declares under penalty of perjury, as provided for by §1-109 of the Illinois Code of Civil Procedure, that the following statements are true:

The Law Offices of Keith J. Keogh, Ltd. consists of two attorneys and a paralegal as well as receptionists. The firm focuses on consumer protection cases for both individuals and class actions.

I am a partner of the firm and member of United States Court of Appeals for the Seventh Circuit, Northern District of Illinois, Southern District of Indiana, and Illinois State Bar as well as several bar associations and the National Association of Consumer Advocates and Association of Trial Lawyers of America.

I was lead counsel in the following class settlements: *Overlord Enterprises v. Wheaton Winfield Dental Associates*, 04 CH 01613, Circuit Court Cook County (Judge McGann)(Class Approval Pending); *Whiting v SunGard*, 03 CH 21135, Circuit Court Cook County (Judge McGann); *Whiting v. GoIndustry*, 03 CH 21136, Circuit Court Cook County (Judge McGann). I was the associate primarily responsible for the following class settlements: *Wollert v. Client Services*, 2000 U.S. Dist. LEXIS 6485 (N.D. Ill. 2000); *Rentas v. Vacation Break USA*, 98 CH 2782, Circuit Court of Cook County (Judge Billik); *McDonald v. Washington Mutual Bank*, supra; *Wright v. Bank One Credit Corp.*, 99 C 7124 (N.D. Ill. Judge Guzman); *Arriaga v. Columbia Mortgage*, 01 C 2509 (N.D. Ill. Judge Lindberg); *Frazier v. Provident Mortgage*, 00 C 5464 (N.D. Ill. Judge Coar); *Largosa v. Universal Lenders*, 99 C 5049 (N.D. Ill. Judge Leinenweber); *Arriaga v. GN Mortgage*, (N.D. Ill. Judge Holderman); *Williams v. Mercantile Mortgage*, 00 C 6441 (N.D. Ill. Judge Pallmeyer); *Reid v. First American Title*, 00 C 4000 (N.D. Ill. Magistrate Judge Ashman); *Fabricant*

*v. Old Kent*, 99 C 6846 (N.D. Ill. Magistrate Judge Bobrick); *Mendelovits v. Sears*, 99 C 4730 (N.D. Ill. Magistrate Judge Brown); *Leon v. Washington Mutual*, 01 C 1645 (N.D. Ill. Judge Alesia).

The individual class member's recovery in some of these settlements were substantial. For example, in one of the cases against a major bank the class members' recovery was 100% of their actual damages resulting in a payout of $1,000 to $9,000 per class member. In another case against a major lender regarding mortgage servicing responses, each class member who submitted a claim form received $1,431. *McDonald v. Washington Mutual Bank*

Some reported cases of mine involving consumer protection cases include: *Echevarria et al. v. Chicago Title and Trust Co.*, 256 F.3d 623 (7th Cir. 2001); *Hill v. St. Paul Bank*, 329 Ill. App. 3d 705 (1st Dist. 2002); *Cook v. River Oaks Hyundai, Inc.*, 2006 U.S. Dist. LEXIS 21646 (N. D. Ill. 2006); *Gonzalez v. W. Suburban Imps.*, Inc., 411 F. Supp. 2d 970 (N.D. Ill. 2006); *Eromon v. Grand Auto Sales, Inc.*, 333 F. Supp. 2d 702 (N.D. Ill. 2004); *Williams v. Precision Recovery, Inc.*, 2004 U.S. Dist. LEXIS 6190 (N.D. Ill. 2004); *Doe v. Templeton*, 2003 U.S. Dist. LEXIS 24471 (N.D. Ill. 2003); *Ayala v. Sonnenschein Fin. Servs.*, 2003 U.S. Dist. LEXIS 20148 (N.D. Ill. 2003); *Gallegos v. Rizza Chevrolet, Inc.*, 2003 U.S. Dist. LEXIS 18060 (N.D. Ill. 2003); *Szwebel v. Pap's Auto Sales, Inc.*, 2003 U.S. Dist. LEXIS 13044 (N.D. Ill. 2003); *Johnstone v. Bank of America*, 173 F. Supp.2d 809 (N.D. Ill. 2001); *Leon v. Washington Mutual Bank*, 164 F. Supp.2d 1034 (N.D. Ill. 2001); *Ploog v. HomeSide Lending*, 2001 WL 987889 (N.D. Ill. 2001); *Christakos v. Intercounty Title*, 196 F.R.D. 496 (N.D. Ill. 2000); *Batten v. Bank One*, 2000 WL 1364408 (N.D. Ill. 2000); *McDonald v. Washington Mutual Bank*, 2000 WL 875416 (N.D. Ill. 2000); and *Williamson v. Advanta Mtge Corp.*, 1999 U.S. Dist. LEXIS 16374 (N.D. Ill. 1999). The *Christakos* case significantly broadened title and mortgage companies' liability under Real Estate Settlement Procedures Act ("RESPA") and *McDonald* is the first reported decision to certify a class regarding

mortgage servicing issues under the Cranston-Gonzales Amendment of RESPA.

I have argued before the Seventh Circuit, the First District of Illinois and the Multi-Litigation Panel in *Sawyer v Esurance (*Ruling Pending) , *Echevarria, et al. v. Chicago Title and Trust Co.*, *Hill v. St. Paul Bank*, and *In Re: Sears, Roebuck & Company Debt Redemption Agreements Litigation*, MDL Docket No. 1389.

*Echevaria* was part of a group of several cases that resulted in a nine million dollar settlement with Chicago Title.

My published works include co-authoring and co-editing the 1997 supplement to *Lane's Goldstein Trial Practice Guide* and *Lane's Medical Litigation Guide*.

In January 2007, Alexander H. Burke joined the firm. Mr. Burke previously worked for a consumer class action firm, and has devoted his legal career to protection of consumers' rights. Notable court opinions from cases that he litigated include: *Barnes v. FleetBoston Fin. Corp.*, C.A. No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D.Mass. Aug. 22, 2006) (appeal bond required for potentially frivolous objection to large class action settlement); *Longo v. Law Offices of Gerald E. Moore & Assocs., P.C.*, 04 C 5759, 2006 U.S. Dist. LEXIS 19624 (N.D.Ill. March 30, 2006) (class certification granted); *Nichols v. Northland Groups, Inc.*, case nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 U.S. Dist. LEXIS 15037 (N.D.Ill. March 31, 2006) (class certification granted for concurrent classes against same defendant for ongoing violations); *Lucas v. GC Services, L.P.*, case No. 2:03 cv 498, 226 F.R.D. 328 (N.D.Ind. 2004) (compelling discovery), 226 F.R.D. 337 (N.D.Ind. 2005) (granting class certification); *Murry v. America's Mortg. Banc, Inc.*, case nos. 03 C 5811, 03 C 6186, 2006 U.S. Dist. LEXIS 42900 (N.D. Ill. June 5, 2006) (granting class certification); *Rawson v. Credigy Receivables, Inc.*, case no. 05 C 6032, 2006 U.S. Dist. LEXIS 6450 (N.D. Ill. Feb. 16, 2006) (denying motion to dismiss in case against debt collector for suing on time-barred debts); *In re*

*Kingen*, no. 01-84275, adv. No. 03-8020, 2004 Bankr. LEXIS 146 (Bankr.C. D. Ill. Feb. 17, 2004) (extending bankruptcy law in favor of debtor).

Mr. Burke graduated from Colgate University in 1997 (B.A. International Relations), and Loyola University Chicago School of Law in 2003 (J.D.).

During law school he served as an extern to the Honorable Robert W. Gettleman of the District Court for the Northern District of Illinois and as a law clerk for the Honorable Nancy Jo Arnold, Chancery Division, Circuit Court of Cook County. He also served as an extern for the United States Attorney for the Northern District of Illinois and was the Feature Articles Editor of the Loyola Consumer Law Review and Executive Editor of the International Law Forum. Mr. Burke's published work includes *International Harvesting on the Internet: A Consumer's Perspective on 2001 Proposed Legislation Restricting the Use of Cookies and Information Sharing*, 14 Loy. Consumer L. Rev. 125 (2002).

Mr. Burke is licensed to practice law in the State of Illinois and is a member of the bar of the United States Court of Appeals for the Seventh and First Circuits, as well as the Northern District of Illinois, Central District of Illinois, Southern District of Illinois, Eastern District of Wisconsin, Northern District of Indiana and Southern District of Indiana. Mr. Burke is also an active member of the Chicago Bar Association, Illinois Bar Association and the National Association of Consumer Advocates

Executed at Chicago, Illinois, on June 4, 2007.

Keith J. Keogh

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN CICILLINE JR., JEFFREY BATTERSON and CHRISTOPHER IOSELLO, individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 07 C 2333 |
| | ) | Judge Bucklo |
| JEWEL FOOD STORES, INC. | ) ) | Magistrate Judge Keys |
| Defendant. | ) ) ) | |

## DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following statements are true:

      **1.**     Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals—Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, and Michelle R. Teggelaar—and 9 associates. The firm operates a practice devoted almost exclusively to consumer advocacy, based upon federal and state statutes and common law violation of consumers' rights.

      **2.**     As a part of this practice, the firm has filed numerous cases under the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.*, primarily as class actions. One line of cases alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA. Important decisions in this area include: Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004), Murray v. GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006); Perry v. First National Bank, 459 F.3d 816 (7th Cir. 2006); Murray v. Sunrise Chevrolet, Inc., 441 F. Supp.2d 940 (N.D. Ill. 2006); Shellman v. Countrywide Home Loans, Inc., 1:05-CV-234-TS, 2007 U.S. Dist. LEXIS 27491 (N.D.Ind., April 12, 2007); In re Ocean Bank, 06 C 3515, 2007 U.S. Dist. LEXIS 28973 (N.D.Ill., March 16, 2007), later opinion, 2007 U.S. Dist. LEXIS 29443 (N.D. Ill., Apr. 9, 2007); Asbury v. People's Choice Home Loan, Inc., 05 C 5483, 2007 U.S. Dist. LEXIS 17654 (N.D.Ill., March 12, 2007); Claffey v. River Oaks Hyundai, Inc., 238 F.R.D. 464 (N.D.Ill. 2006); Murray v. IndyMac Bank, FSB, 461 F.Supp.2d 645 (N.D.Ill. 2006); Kudlicki v. Capital One Auto Finance, Inc., 2006 U.S. Dist. LEXIS 81103 (N.D. Ill., Nov. 2, 2006); Thomas v.

1

Capital One Auto Finance, Inc., 2006 U.S. Dist. LEXIS 81358 (N.D. Ill., Oct. 24, 2006); Pavone v. Aegis Lending Corp., 2006 U.S. Dist. LEXIS 62157 (N.D. Ill., Aug. 31, 2006); Murray v. E*Trade Financial Corp., 2006 U.S. Dist. LEXIS 53945 (N.D. Ill., July 19, 2006); Bonner v. Home 123 Corp., 2006 U.S. Dist. LEXIS 37922 (N.D. Ind., May 25, 2006); Murray v. Sunrise Chevrolet , Inc., 2006 U.S. Dist. LEXIS 19626 (N.D. Ill., March 30, 2006); and Murray v. Finance America, LLC, 2006 U.S. Dist. LEXIS 15850 (N.D. Ill., April 4, 2006). More than 15 such cases have been settled on a classwide basis. Almost all of the FCRA "firm offer" decisions favorable to plaintiffs and class members have been brought by the firm. We have won both on issues of law and questions of fact, developed through extensive discovery.

   **3.** The firm's experience in class action litigation on the behalf of consumers, as described below, demonstrates its ability to prosecute the above-entitled action vigorously and to provide adequate representation for putative class members.

   **4.** **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, mostly through class actions. He is the co-author of Rosmarin & Edelman, Consumer Class Action Manual (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of Payday Loans: Big Interest Rates and Little Regulation, 11 Loy.Consumer L.Rptr. 174 (1999); author of Consumer Fraud and Insurance Claims, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," Ohio Consumer Law (1995 ed.); co-author of Fair Debt Collection: The Need for Private Enforcement, 7 Loy.Consumer L.Rptr. 89 (1995); author of An Overview of The Fair Debt Collection Practices Act, in Financial Services Litigation, Practicing Law Institute (1999); co-author of Residential Mortgage Litigation, in Financial Services Litigation, Practicing Law Institute (1996); author of Automobile Leasing: Problems and Solutions, 7 Loy.Consumer L.Rptr. 14 (1994); author of Current Trends in Residential Mortgage Litigation, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); author of Applicability of Illinois Consumer Fraud Act in Favor of Out-of-State Consumers, 8 Loy.Consumer L.Rptr. 27 (1996); co-author of Illinois Consumer Law (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, Attorney Liability Under the Fair Debt Collection Practices Act (Chicago Bar Ass'n 1996); author of The Fair Debt Collection Practices Act: Recent Developments, 8 Loy.Consumer L. Rptr. 303 (1996); author of Second Mortgage Frauds, Nat'l Consumer Rights Litigation Conference 67 (Oct. 19-20, 1992); and author of Compulsory Arbitration of Consumer Disputes, Nat'l Consumer Rights Litigation Conference 54, 67 (1994). He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Eighth Circuit Court of

Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Court for the District of Arizona, United States District Court for the District of Connecticut, and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar. He has also spoken several times at seminars conducted by the Practising Law Institute, including at conferences conducted by the PLI's Consumer Financial Services Litigation Institute.

     **5.**    **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School. She formerly supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs, Latturner & Goodwin in early 1991. Recent decisions include: Barnes v. Fleet National Bank NA, 370 F.3d 164 (1st Cir. 2004); In re Community Bank of No. Va. Second Mortgage Loan Litig., 418 F.3d 277 (3d Cir. 2005); and Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark LLC, 214 F.3d 872 (7th Cir. 2000). Decisions in which she was involved prior to joining the firm include: Johnson v. Heckler, 607 F.Supp. 875 (N.D.Ill. 1984), and 100 F.R.D. 70 (N.D. Ill. 1983); Sanders v. Shephard, 185 Ill.App.3d 719, 541 N.E.2d 1150 (1st Dist. 1989); Maller v. Cohen, 176 Ill.App.3d 987, 531 N.E.2d 1029 (1st Dist. 1988); Wright v. Department of Labor, 166 Ill.App.3d 438, 519 N.E.2d 1054 (1st Dist. 1988); Barron v. Ward, 165 Ill.App.3d 653, 517 N.E.2d 591 (1st Dist. 1987); City of Chicago v. Leviton, 137 Ill.App.3d 126, 484 N.E.2d 438 (1st Dist. 1985); Jude v. Morrissey, 117 Ill.App.3d 782, 454 N.E.2d 24 (1st Dist. 1983). She is a member of the Northern District of Illinois trial bar. She has also spoken several times at seminars conducted by the Practising Law Institute, including at conferences conducted by the PLI's Consumer Financial Services Litigation Institute.

     **6.**    **James O. Latturner** is a 1962 graduate of the University of Chicago Law School. Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma. From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions. While at the Legal Assistance Foundation, he argued two cases before the Supreme Court, including Dixon v. Love, 431 U.S. 105 (1977) (authority of Illinois Secretary of State to revoke drivers' licenses), and Gonzalez v. Automatic Employees Credit Union, 419 U.S. 90 (1974) (constitutionality of auto repossession and resale provisions of Illinois Commercial Code). His publications include Chapter 8 ("Defendants") in Federal Practice Manual for Legal Services Attorneys (M. Masinter, Ed., National Legal Aid and Defender Association 1989); Governmental Tort Immunity in Illinois, 55 Ill.B.J. 29 (1966); Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations, 2 Loy.Consumer L.Rep. 64 (1990), and Illinois Consumer Law (Chicago Bar Ass'n 1996). He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience. He has argued some 30 appeals, including two cases in the United States Supreme Court and two in the Illinois Supreme

3

Court. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar. He has also spoken several times at seminars conducted by the Practising Law Institute, including at conferences conducted by the PLI's Consumer Financial Services Litigation Institute.

       7.     **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). She has been with the firm since her graduation and has participated in many of the cases described below. **Reported Cases.** Williams v. Chartwell Financial Services, LTD, 204 F.3d 748 (7th Cir. 2000); Hillenbrand v. Meyer Medical Group, 682 N.E.2d 101 (Ill.1st Dist. 1997), 720 N.E.2d 287 (Ill.1st Dist. 1999); Bessette v. Avco Fin. Servs., 230 F.3d 439 (1st Cir. 2000); Large v. Conseco Fin. Servicing Co., 292 F.3d 49 (1st Cir. 2002);; Carbajal v. Capital One, 219 F.R.D. 437 (N.D.Ill. 2004); Russo v. B&B Catering, 209 F.Supp.2d 857 (N.D.IL 2002); Garcia v. Village of Bensenville, 2002 U.S.Dist. LEXIS 3803 (N.D.Ill.); Romaker v. Crossland Mtg. Co., 1996 U.S.Dist. LEXIS 6490 (N.D.IL); Mount v. LaSalle Bank Lake View, 926 F.Supp. 759 (N.D.Ill 1996). She is a member of the Northern District of Illinois trial bar.

       8.     **Michelle R. Teggelaar** is a graduate of the University of Illinois (B.A., 1993) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D., with honors, 1997). **Reported Cases:** Johnson v. Revenue Management, Inc., 169 F.3d 1057 (7th Cir.1999); Coelho v. Park Ridge Oldsmobile, Inc., 247 F. Supp. 2d 1004 (N.D. Ill. 2003); Dominguez v. Alliance Mtge., Co., 226 F. Supp. 2d 907 (N.D. Ill. 2002); Watson v. CBSK Financial Group, Inc., 197 F. Supp. 2d 1118 (N.D. Ill. 2002); Van Jackson v. Check 'N Go of Illinois, Inc. 123 F. Supp. 2d 1085 (N.D. Ill. 2000), Van Jackson v. Check 'N Go of Illinois, Inc., 123 F. Supp. 2d 1079, Van Jackson v. Check 'N Go of Illinois, Inc., 114 F. Supp. 2d 731 (N.D. Ill. 2000); Van Jackson v. Check 'N Go of Illinois, Inc., 193 F.R.D. 544 (N.D. Ill. 2000); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Veillard v. Mednick, 24 F. Supp. 2d 863 (N.D. Ill.1998); Sledge v. Sands, 182 F.R.D. 255 (N.D. Ill. 1998), Vines v. Sands, 188 F.R.D. 203 (N.D. Ill. 1999), Livingston v. Fast Cash USA, Inc., 753 N.E.2d 572 (Ind. 2001); Carroll v. Butterfield Heath Care, Inc., 2003 WL 22462604 (N.D. Ill. 2003); Payton v. New Century Mtge., Inc., 2003 WL 22349118 (N.D. Ill. 2003); Seidat v. Allied Interstate, Inc., 2003 WL 2146825 (N.D. Ill. 2003) (Report and Recommendation); Michalowski v. Flagstar Bank, FSB, 2002 WL 112905 (N.D. Ill. 2002); Bigalke v. Creditrust Corp., 2001 WL 1098047 (N.D. Ill 2001) (Report and Recommendation); Donnelly v. Illini Cash Advance, 2000 WL 1161076 (N.D. Ill. 2000); Mitchem v. Paycheck Advance Express, 2000 WL 419992 (N.D. Ill 2000); Pinkett v. Moolah Loan Co., 1999 WL 1080596 (N.D. Ill. 1999); Farley v. Diversified Collection Serv., 1999 WL 965496 (N.D. Ill. 1999); Davis v. Commercial Check Control, 1999 WL 965496 (N.D. Ill. 1999); Sledge v. Sands, 1999 WL 261745 (N.D. Ill. 1999); Slater v. Credit Sciences, Inc., 1998 WL 341631 (N.D. Ill. 1998); Slater v. Credit Sciences, Inc., 1998 WL 299803 (N.D. Ill. 1998).

       9.     **Associates**

**a.** **Francis R. Greene** is a graduate of Johns Hopkins University (B.A., with honors, May 1984), Rutgers University (Ph.D., October 1991), and Northwestern University Law School (J.D., 2000). **Reported Cases:** Johnson v. Thomas, 342 Ill. App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); Jolly v. Shapiro & Kreisman, 237 F. Supp. 2d 888 (N.D. Ill. 2002); Parker v. 1-800 Bar None, a Financial Corp., Inc. 2002 WL 215530 (N.D. Ill. 2002); Jiang v. Allstate Ins. Co. (199 F.R.D. 267); Hill v. AMOCO Oil Co. 2003 WL 262424, 2001 WL 293628 (N.D. Ill. 2003); Roquet v. Arthur Anderson LLP 2002 WL 1900768 (N.D. Ill. 2002); White v. Financial Credit, Corp. 2001 WL 1665386 (N.D. Ill.); Ransom v. Gurnee Volkswagen 2001 WL 1241297 (N.D. Ill. 2001) and 2002 WL 449703 (N.D. Ill 2002); Doxie v. Impac Funding Corp. 2002 WL 31045387 (N.D. Ill. 2002); Levin v. Kluever & Platt LLC 2003 WL 22757763 and 2003 WL 22757764 (N.D. Ill. 2003); Pleasant v. Risk Management Alternatives 2003 WL 22175390 (N.D. Ill. 2003); Jenkins v. Mercantile Mortgage 231 F. Supp. 2d 737 (N.D. Ill. 2002); Hobson v. Lincoln Ins. Agency, Inc. 2001 WL 55528, 2001 WL 648958 (N.D. Ill. 2001), Anderson v. Lincoln Ins. Agency 2003 WL 291928, Hobson v. Lincoln Ins. Agency 2003 WL 338161 (N.D. Ill. 2003). He is a member of the Northern District of Illinois trial bar.

**b.** **Julie Clark** (neé Cobolovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** Qualkenbush v. Harris Trust & Savings Bank 219 F.Supp.2d 935 (N.D.Ill.,2002); Covington-McIntosh v. Mount Glenwood Memory Gardens 2002 WL 31369747 (N.D.Ill.,2002), 2003 WL 22359626 (N.D. Ill. 2003).

**c.** **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002).

**d.** **Albert F. Hofeld Jr.** is a graduate of Reed College (B.A., 1990), the University of Chicago Divinity School (M. Div., 1994), and Northwestern University Law School (J.D,. 2000).

**e.** **Thomas E. Soule** is a graduate of Stanford University (B.A., 2000), and the University of Wisconsin Law School (J.D., 2003). Mr. Soule has been assigned the above-entitled case as the lead associate. **Reported Cases:** Claffey v. River Oaks Hyundai, Inc., 486 F.Supp.2d 776 (N.D.Ill. 2007); Claffey v. River Oaks Hyundai, Inc., 238 F.R.D. 464 (N.D.Ill. 2006); Murray v. IndyMac Bank, FSB, 461 F.Supp.2d 645 (N.D.Ill. 2006); Murray v. Sunrise Chevrolet, Inc., 441 F.Supp.2d 940 (N.D.Ill. 2006); Murray v. New Cingular Wireless Services, Inc., 232 F.R.D. 295 (N.D.Ill. 2005); Francis v. Snyder, 389 F.Supp.2d 1034 (N.D.Ill. 2005); Blanchard v. Speedway SuperAmerica, LLC, 222 F.R.D. 353 (N.D.Ill. 2004).

**f.** **Deborah A. Morgan** is a graduate of Sheffield (England) University (B.A. with honors 1989), University of Oregon (M.A. 1995), and American University, Washington College of Law (J.D. *summa cum laude* 2006).

**g.** **Cassandra P. Miller** is a graduate of the University of Wisconsin

– Madison (B.A. 2001) and John Marshall Law School (J.D. 2006).

        **h.**     **Tiffany N. Hardy** (admitted in New York, the District of Columbia and the Northern District of Illinois, admission in Illinois pending) is a graduate of Tuskegee University (B.A. 1998) and Syracuse University College of Law (J.D.2001).

        **i.**     **Zachary A. Jacobs** (admission pending) is a graduate of the University of South Dakota (B.S. 2002) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D. 2007).

        **10.** The firm also has 12 legal assistants, as well as other support staff.

        **11.**     Since its inception, the firm has recovered more than $500 million for consumers.

        **12.**     In addition to Fair Credit Reporting Act litigation, the firm has brought hundreds of class actions based on other consumer protection laws, as discussed below.

        **13.**     **Mortgage charges and servicing practices:** The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices. These include MDL-899, In re Mortgage Escrow Deposit Litigation, MDL-1713, In re Bank of America ATM Fee Litigation, and MDL-1604, In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, as well as the Fairbanks mortgage servicing litigation. Decisions in the firm's mortgage cases include: <u>Christakos v. Intercounty Title Co.</u>, 196 F.R.D. 496 (N.D.Ill. 2000); <u>Johnstone v. Bank of America, N.A.</u>, 173 F.Supp.2d 809 (N.D.Ill. 2001); <u>Leon v. Washington Mut. Bank, F.A.</u>, 164 F.Supp.2d 1034 (N.D.Ill. 2001); <u>Williamson v. Advanta Mortg. Corp.</u>, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); <u>McDonald v. Washington Mut. Bank, F.A.</u>, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); <u>Metmor Financial, Inc. v. Eighth Judicial District Court</u>, No. 23848 (Nev.Sup.Ct., Apr. 27, 1993); <u>GMAC Mtge. Corp. v. Stapleton</u>, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); <u>Leff v. Olympic Fed. S. & L. Ass'n</u>, 1986 WL 10636 (N.D.Ill. 1986); <u>Aitken v. Fleet Mtge. Corp.</u>, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. 1991), and 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); <u>Poindexter v. National Mtge. Corp.</u>, 1991 U.S.Dist. LEXIS 19643 (N.D.Ill., Dec. 23, 1991), later opinion, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); <u>Sanders v. Lincoln Service Corp.</u>, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. 1993); <u>Robinson v. Empire of America Realty Credit Corp.</u>, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); <u>In re Mortgage Escrow Deposit Litigation</u>, M.D.L. 899, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 8, 1994); <u>Greenberg v. Republic Federal S. & L. Ass'n</u>, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

        **14.**     The recoveries in the escrow overcharge cases alone are over $250 million. <u>Leff</u> was the seminal case on mortgage escrow overcharges.

**15.** The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

**16.** **Bankruptcy:** The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. Conley v. Sears, Roebuck, 1:97cv11149 (D.Mass); Fisher v. Lechmere Inc., 1:97cv3065, (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. Bessette v. Avco Financial Services, 99-2291 (1st Cir., October 27, 2000).

**17.** **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

**a.** Hidden finance charges resulting from pass-on of discounts on auto purchases. Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 1998 U.S. App. LEXIS 22663 (7th Cir. 1998).

**b.** Misrepresentation of amounts disbursed for extended warranties. Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283 (7th Cir. 1997); Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 1998 U.S.App. LEXIS 16434 (7th Cir. 1998); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); Slawson v. Currie Motors Lincoln Mercury, Inc., 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 5, 1995); Cirone-Shadow v. Union Nissan, Inc., 1995 U.S.Dist. LEXIS 1379 (N.D.Ill., Feb. 3, 1995), later opinion, 1995 U.S.Dist. LEXIS 5232 (N.D.Ill., April 20, 1995) (same); Chandler v. Southwest Jeep-Eagle, Inc., 1995 U.S. Dist. LEXIS 8212 (N.D.Ill., June 8, 1995); Shields v. Lefta, Inc., 1995 U.S.Dist. LEXIS 7807 (N.D.Ill., June 5, 1995).

**c.** Spot delivery. Janikowski v. Lynch Ford, Inc., 1999 U.S. Dist. LEXIS 3524 (N.D.Ill., March 11, 1999); Diaz v. Westgate Lincoln Mercury, Inc., 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. 1994); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

**d.** Force placed insurance. Bermudez v. First of America Bank Champion, N.A., 860 F.Supp. 580 (N.D.Ill. 1994); Travis v. Boulevard Bank, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill., 1995); Moore v. Fidelity Financial Services, Inc., 884 F. Supp. 288 (N.D.Ill. 1995).

**e.** Improper obligation of cosigners. Lee v. Nationwide Cassell, 174 Ill.2d 540, 675 N.E.2d 599 (1996); Taylor v. Trans Acceptance Corp., 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995).

**f.** Evasion of FTC holder rule. <u>Brown v. LaSalle Northwest Nat'l Bank</u>, 148 F.R.D. 584 (N.D.Ill. 1993), 820 F.Supp. 1078 (N.D.Ill. 1993), and 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

**18.** These cases also had a substantial effect on industry practices. The warranty cases, such as <u>Grimaldi</u>, <u>Gibson</u>, <u>Slawson</u>, <u>Cirone-Shadow</u>, <u>Chandler</u>, and <u>Shields</u>, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

**19.    Predatory lending practices:** The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, mostly as class actions. <u>Livingston v. Fast Cash USA, Inc.</u>, 753 N.E.2d 572 (Ind. Sup. Ct. 2001); <u>Williams v. Chartwell Fin. Servs.</u>, 204 F.3d 748 (7th Cir. 2000); <u>Parker v. 1-800 Bar None, a Financial Corp., Inc.</u>, 01 C 4488, 2002 WL 215530 (N.D.Ill., Feb 12, 2002); <u>Gilkey v. Central Clearing Co.</u>, 202 F.R.D. 515 (E.D.Mich. 2001); <u>Van Jackson v. Check 'N Go of Ill., Inc.</u>, 114 F.Supp.2d 731 (N.D.Ill. 2000), later opinion, 193 F.R.D. 544 (N.D.Ill. 2000), 123 F.Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F.Supp. 2d 1085 (N.D.Ill. 2000); <u>Henry v. Cash Today, Inc.</u>, 199 F.R.D. 566 (S.D.Tex. 2000); <u>Donnelly v. Illini Cash Advance, Inc.</u>, 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); <u>Jones v. Kunin</u>, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); <u>Davis v. Cash for Payday</u>, 193 F.R.D. 518 (N.D.Ill. 2000); <u>Reese v. Hammer Fin. Corp.</u>, 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); <u>Pinkett v. Moolah Loan Co.</u>, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); <u>Gutierrez v. Devon Fin. Servs.</u>, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); <u>Vance v. National Benefit Ass'n</u>, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

**20.    Other consumer credit issues:** The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

**a.** Phony nonfiling insurance. <u>Edwards v. Your Credit Inc.</u>, 148 F.3d 427, 1998 U.S. App. LEXIS 16818 (5th Cir. 1998); <u>Adams v. Plaza Finance Co.</u>, 1999 U.S. App. LEXIS 1052 (7th Cir., January 27, 1999); <u>Johnson v. Aronson Furniture Co.</u>, 1997 U.S. Dist. LEXIS 3979 (N.D. Ill., March 31, 1997).

**b.** The McCarran Ferguson Act exemption. <u>Autry v. Northwest Premium Services, Inc.</u>, 144 F.3d 1037, 1998 U.S. App. LEXIS 9564 (7th Cir. 1998).

**c.** Loan flipping. <u>Emery v. American General</u>, 71 F.3d 1343 (7th Cir. 1995). <u>Emery</u> limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

8

     **d.**    Home improvement financing practices. <u>Fidelity Financial Services, Inc. v. Hicks</u>, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; <u>Heastie v. Community Bank of Greater Peoria</u>, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990). <u>Heastie</u> granted certification of a class of over 6,000 in a home improvement fraud case.

     **e.**    Arbitration clauses. <u>Wrightson v. ITT Financial Services</u>, 617 So.2d 334 (Fla. 1st DCA 1993).

     **f.**    Insurance packing. <u>Elliott v. ITT Corp.</u>, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

     **21.**    **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include <u>Lundquist v. Security Pacific Automotive Financial Services Corp.</u>, Civ. No. 5:91-754 (TGFD) (D.Conn.), <u>aff'd</u>, 993 F.2d 11 (2d Cir. 1993); <u>Kedziora v. Citicorp Nat'l Services, Inc.</u>, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); <u>Johnson v. Steven Sims Subaru and Subaru Leasing</u>, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); <u>McCarthy v. PNC Credit Corp.</u>, 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); <u>Kinsella v. Midland Credit Mgmt., Inc.</u>, 1992 U.S.Dist. LEXIS 1405, 1992 WL 26908 (N.D.Ill. 1992); <u>Highsmith v. Chrysler Credit Corp.</u>, 18 F.3d 434 (7th Cir. 1994); <u>Black v. Mitsubishi Motors Credit of America, Inc.</u>, 1994 U.S.Dist. LEXIS 11158 (N.D.Ill., August 10, 1994); <u>Simon v. World Omni Leasing Inc.</u>, 146 F.R.D. 197 (S.D.Ala. 1992). Settlements in such cases include <u>Shepherd v. Volvo Finance North America, Inc.</u>, 1-93-CV-971 (N.D.Ga.)($8 million benefit); <u>McCarthy v. PNC Credit Corp.</u>, 291 CV 00854 PCD (D.Conn.); <u>Lynch Leasing Co. v. Moore</u>, 90 CH 876 (Circuit Court of Cook County, Illinois) (class in auto lease case was certified for litigation purposes, partial summary judgment was entered, and case was then settled); <u>Blank v. Nissan Motor Acceptance Corp.</u>, 91 L 8516 (Circuit Court of Cook County, Illinois); <u>Mortimer v. Toyota Motor Credit Co.</u>, 91 L 18043 (Circuit Court of Cook County, Illinois); <u>Duffy v. Security Pacific Automotive Financial Services, Inc.</u>, 93-729 IEG (BTM) (S.D.Cal., April 28, 1994).

     **22.**    <u>Lundquist</u> and <u>Highsmith</u> are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the <u>Lundquist</u> case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

     **23.**    **Collection practices:** The firm has brought a number of cases under the Fair Debt Collection Practices Act, both class and individual. Decisions in these cases include: <u>Heintz v. Jenkins</u>, 514 U.S. 291, 115 S.Ct. 1489 (1995), affirming 25 F.3d 536 (7th Cir. 1994);

Johnson v. Revenue Management Corp., 169 F.3d 1057 (7th Cir. 1999); Keele v. Wexler & Wexler, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. 1995) (merits), aff'd, 149 F.3d 589, 1998 U.S.App. LEXIS 15029 (7th Cir. 1998); Mace v. Van Ru Credit Corp., 109 F.3d 338, 1997 U.S.App. LEXIS 5000 (7th Cir., Mar. 17, 1997); Maguire v. Citicorp Retail Services, Inc., 147 F.3d 232, 1998 U.S.App. LEXIS 16112 (2d Cir. 1998); Young v. Citicorp Retail Services, Inc., 1998 U.S.App. LEXIS 20268 (2d Cir. 1998); Charles v. Lundgren & Assocs., P.C., 119 F.3d 739, 1997 U.S. App. LEXIS 16786 (9th Cir. 1997); Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996), affirming Avila v. Van Ru Credit Corp., 1995 U.S.Dist. LEXIS 461 (N.D.Ill., Jan. 10, 1995), later opinion, 1995 U.S.Dist. LEXIS 1502 (N.D.Ill., Feb. 6, 1995), later opinion, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 14, 1995); Tolentino v. Friedman, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); Blakemore v. Pekay, 895 F.Supp.972 (N.D.Ill. 1995); Oglesby v. Rotche, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 4, 1993), later opinion, 1994 U.S.Dist. LEXIS 4866 (N.D.Ill., April 15, 1994); Laws v. Cheslock, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999);Davis v. Commercial Check Control, Inc., 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); Hoffman v. Partners in Collections, Inc., 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); Vaughn v. CSC Credit Services, Inc., 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); Beasley v. Blatt, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 14, 1994); Taylor v. Fink, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); Gordon v. Fink, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); Brujis v. Shaw, 876 F.Supp. 198 (N.D.Ill. 1995). Settlements in such cases include Boddie v. Meyer, 93 C 2975 (N.D.Ill.); and Cramer v. First of America Bank Corporation, 93 C 3189 (N.D.Ill.).

   24. Jenkins v. Heintz is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. I argued it before the Supreme Court and Seventh Circuit. Avila v. Rubin is a leading decision on phony "attorney letters."

   25. **Class action procedure:** Important decisions include Crawford v. Equifax Payment Services, Inc., 201 F.3d 877 (7th Cir. 2000); Blair v. Equifax Check Services, Inc., 181 F.3d 832 (7th Cir. 1999); Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997); and Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

   26. **Landlord-tenant:** The firm has brought a number of class actions against landlords for failing to pay interest on security deposits or commingling security deposits.

   27. Some of the other reported decisions in our cases include: Elder v. Coronet Ins. Co., 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); Smith v. Keycorp Mtge., Inc., 151 Bankr. 870 (N.D.Ill. 1992); Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); Armstrong v. Edelson, 718 F.Supp. 1372 (N.D.Ill. 1989); Newman v. 1st 1440 Investment, Inc., 1993 U.S.Dist. LEXIS 354 (N.D.Ill. 1993); Mountain States Tel. & Tel. Co. v. District Court, 778 P.2d 667 (Colo. 1989); Disher v. Fulgoni, 124 Ill.App.3d 257, 464 N.E.2d 639, 643 (1st

Dist. 1984); Harman v. Lyphomed, Inc., 122 F.R.D. 522 (N.D.Ill. 1988); Haslam v. Lefta, Inc., 1992 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); Source One Mortgage Services Corp. v. Jones, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994).

**28.** Gordon v. Boden is the first decision approving "fluid recovery" in an Illinois class action. Elder v. Coronet Insurance held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

All of the preceding is true and correct.

Executed on this day, September 12, 2007, in Chicago, Illinois.

_____

Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

11