**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHEN CICILLINE, JR., et al, individually and on behalf of a class, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO.: 07-CV-2333 |
| JEWEL FOOD STORES, INC., d/b/a JEWEL-OSCO, a New York corporation, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion for Class Certification (DE 45), filed by Plaintiffs Stephen Cicilline Jr., Jeffrey Batterson, and Christopher Iosello on September 12, 2007. The Court has reviewed the parties' briefs and statements, and, for the reasons stated below, the Court grants Plaintiffs' Motion for Class Certification and denies as moot Plaintiffs' Motion to Cite Additional Authority in Support of Class Certification (DE 76).

**I.      Background**

This lawsuit is one of hundreds of nearly identical actions filed against retailers in several states. Plaintiffs Stephen Cicilline, Jr., Jeffrey Batterson, and Christopher Iosello[1] allege that Defendant Jewel Food Stores ("Jewel") violated 15 U.S.C. § 1681c(g), a provision of the Fair Credit Reporting Act ("FCRA"), as amended by the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"). Section 1681c(g) provides:

---

[1] On June 20, 2007, Judge Bucklo, the judge previously assigned to this case, allowed Plaintiffs to file a consolidated complaint (DE 33).

> No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

Any person who willfully fails to comply with this section with respect to any consumer is liable for "any actual damages sustained by the consumer as a result of the failure or damages not less than $100 and not more than $1000." 15 U.S.C. § 1681n(a)(1)(A).

In this case, each of the named Plaintiffs in this putative class action alleges that he shopped at a Jewel supermarket in Illinois in April or May 2007 (after the December 2006 statutory deadline to comply with § 1681c(g)), made purchases using a credit card, and received a computer-generated receipt which displayed the card's expiration date. Plaintiff Cicilline alleges that on two separate occasions, April 21, 2007 and April 30, 2007, he received from Jewel Food Stores, Inc's location at 1224 S. Wabash, Chicago, Illinois, a computer-generated receipt that displayed his credit card expiration date. Plaintiff Batterson alleges that on April 8, 2007, he received from Jewel Food Stores, Inc's location at 13200 Village Green Drive, Huntley, Illinois, a computer-generated receipt that displayed his credit card expiration date. And Plaintiff Iosello alleges that on two separate occasions, April 25, 2007 and May 1, 2007, he received from Jewel Food Stores, Inc's location at 6509 West Grand Avenue, Gurnee, Illinois, a computer-generated receipt that displayed his credit card expiration date. Plaintiffs contend that Jewel should not have printed those expiration dates on their receipts because § 1681c(g) requires deletion of that data on all receipts printed after December 4, 2006. Plaintiffs seek certification of a class consisting of

> [A]ll consumers to [whom] defendant Jewel Food Stores, Inc. provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after the applicable effective date of FACTA, which receipt displays either (a) more than the last five digits of the consumer's credit card or debit card number; (b) the expiration date of the consumer's credit or debit card; and/or (c) both.

Plaintiffs also request that the Court appoint counsel for all three Plaintiffs as counsel for the class.

## II. Analysis

### A. Legal Standard

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, a plaintiff seeking class certification has the burden of proving that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *Matthews v. United Retail, Inc.*, 2008 WL 618960, at *2 (N.D. Ill. March 5, 2008). Failure to satisfy any of these requirements defeats a motion for class certification. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993). If all four prongs of Rule 23(a) are met, the potential class also must satisfy one of the provisions of Rule 23(b). *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992). Plaintiffs seek certification under Rule 23(b)(3), which requires a plaintiff to demonstrate "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The Court exercises broad discretion in determining whether class certification is appropriate given the particular facts of the case. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998); *Murray v. New Cingular Wireless Servs., Inc.,* 232 F.R.D. 295, 298 (N.D. Ill. 2005).

For purposes of deciding the certification question, the Court does not presume that all well-pleaded allegations are true. *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 676-77 (7th Cir. 2001). Rather, the district court should "look[ ] beneath the surface of a complaint to conduct the

3

inquiries identified in [Rule 23] and exercise the discretion it confers." *Id.* at 677. Nevertheless, the Court does not delve into the merits of the ultimate issues in the case, which do not affect the question of class certification under Rule 23. See *Harris v. Circuit City Stores, Inc.,* 2008 WL 400862, at *3-4 (N.D. Ill. Feb. 7, 2008); *Lau v. Arrow Fin. Servs., LLC,* 245 F.R.D. 620, 623 (N.D. Ill. 2007); *Levie v. Sears Roebuck & Co.,* 496 F.Supp.2d 944, 946-47 (N.D. Ill. 2007); *Hyderi v. Washington Mut. Bank, FA,* 235 F.R.D. 390, 395 (N.D. Ill. 2006); *Cavin v. Home Loan Center, Inc.,* 236 F.R.D. 387, 395 (N.D. Ill. 2006). Accordingly, this Court does not consider the parties' arguments as to whether Jewel's alleged violation of FACTA was willful. See also *Matthews*, 2008 WL 618960, at *3.

**B.     Rule 23(a) Requirements**

**1.     Numerosity**

Rule 23(a)(1) requires that a proposed class be so numerous that joinder is impractical. Fed.R.Civ.P. 23(a)(1). Jewel does not contest numerosity and estimates that since December 4, 2006, more than one million customers have received receipts which "may have" displayed their card expiration date. Def. Resp. at 4. This estimate more than satisfies the numerosity requirement. See, *e.g.*, *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) ("Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)."). Indeed, several courts in this district have certified classes for alleged violations of 15 U.S.C. § 1681c(g) with the number of potential class members well beyond forty. See *Meehan v. Buffalo Wild Wings, Inc.,* 2008 WL 548767, at *1 (N.D. Ill. Feb. 26, 2008) (certifying class where defendant allegedly provided thousands of electronically printed receipts during the relevant time period); *Harris v. Circuit City Stores, Inc.,* 2008 WL 400862, at *3-4 (N.D. Ill. Feb. 7, 2008) (recommending

4

certification of class of potentially 110,000 members); *Halperin v. Interpark Inc.,* 2007 WL 4219419, at *1 (N.D. Ill. Nov. 29, 2007) (certifying class where over 900,000 qualifying receipts may have been printed).

### 2. Commonality

Rule 23(a)(2) next requires that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The commonality requirement is satisfied by showing "a common nucleus of operative fact." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998). Cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis. See *Heastie v. Community Bank*, 125 F.R.D. 669, 675 (N.D. Ill. 1989). This is true even though the nature and amount of damages may differ among the members of the class. *Id*.

Plaintiffs have articulated the common questions in this case to be (1) whether Jewel had a practice of providing customers with a sales or transaction receipt on which it printed more than the last five digits of the credit or debit card and/or the expiration date of the card, and (2) whether Jewel willfully violated FACTA. The class definition centers on Jewel's standardized conduct: the failure to redact expiration dates on receipts issued after December 4, 2006. That conduct is the same, as is the violation alleged, with respect to all members of the proposed class. Because the questions at the core of this matter are shared by all potential class members, Plaintiffs' proposed class meets the commonality requirement of Rule 23(a)(2). *Troy v. Red Lantern Inn, Inc.,* 2007 WL 4293014, at *6 (N.D. Ill. December 4, 2007); *Halperin,* 2007 WL 4219419, at *4.

### 3. **Typicality**

Next, Plaintiffs must show that their claims are typical of the claims of the entire class. Fed.R.Civ.P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele,* 149 F.3d at 595 (internal citations omitted). Jewel argues that because some class members might have actual damages and the class representatives have not yet been the victim of credit card fraud traced to Jewel's conduct, their claims may not be typical of the class.

Plaintiffs' claims arise from the same alleged course of conduct – Jewel's printing of noncompliant receipts – as the claims of the other class members. Their claims are also premised on the same legal theory – that Jewel's printing of such receipts was a willful violation of FCRA – as the claims of other class members. Jewel's argument that an unknown class member may have suffered actual damage unique to the majority of the other potential members does not defeat the typicality requirement. As the Seventh Circuit has indicated, if a class member has suffered substantial, actual injury, that member may opt out. See *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (finding class certification appropriate in an FCRA case in which "individual losses * * * are likely to be small – a modest concern about privacy, a slight chance that information would leak out and lead to identity theft," and also finding that if "a few class members' injuries prove to be substantial, they may opt out and litigate independently."). Accordingly, Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).

### 4. Adequacy

Before a class will be certified, Rule 23 also requires a plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To satisfy Rule 23(a)(4), the plaintiff must show that: "(1) the representative does not have conflicting or antagonistic interests compared with the class as a whole; (2) the representative is sufficiently interested in the case outcome to ensure vigorous advocacy; and (3) class counsel is experienced, competent, qualified and able to conduct the litigation vigorously." *Cavin,* 236 F.R.D. at 392-93 (citing *Sec'y of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir. 1986)); see also *Troy,* 2007 WL 4293014, at *2.

Jewel appears to argue that Plaintiffs' attorneys are inadequate because the firms representing two of the three plaintiffs have filed numerous FACTA cases. To the contrary, the experience of class counsel in similar cases weighs in favor of finding that class counsel is competent and qualified. See *Cavin,* 236 F.R.D. at 395; see also *Matthews*, 2008 WL 618960, at *5.

Jewel's other argument against adequacy is that Plaintiffs are not adequate representatives of the class because two of the three plaintiffs are involved in other FACTA cases. However, the similar litigation filed by Plaintiffs Cicilline and Iosello may actually make them better class representatives. See *GMAC Mortgage*, 434 F.3d 948, 954 (7th Cir. 2006) ("Repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions."); *Troy,* 2007 WL 4293014, at *3; *Murray v. E*Trade Fin. Corp*., 240 F.R.D. 392, 395 (N.D. Ill. 2006). Plaintiffs' and counsels' interests are not antagonistic to or in conflict with those

of other potential class members. Accordingly, Plaintiffs have satisfied the adequacy requirement of Rule 23(a)(3).

## C. Rule 23(b)(3) Requirements

Rule 23(b)(3) permits class actions where "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and * * * a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In order to grant class certification under Rule 23(b)(3), a court must find that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members [referred to as the "predominance" requirement], and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy [referred to as the "superiority" requirement]. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3); see also *Troy,* 2007 WL 4293014, at *3. The predominance requirement of Rule 23(b)(3) goes hand in hand with the commonality requirement of Rule 23(a). Both of those requirements are usually satisfied when there is standardized conduct by a defendant toward members of the proposed class, and a common nucleus of operative facts is present. See *Harris v. Circuit City Stores, Inc.,* 2008 WL 400862, at *8 (N.D. Ill. Feb. 7, 2008). Class certification is usually considered a superior method of adjudicating claims involving standardized conduct, even if there are individual issues that exist among class members (for example, on questions such as damages), so long as those individual issues can be managed through bifurcated hearings. See *Murry v. America's Mortgage Banc, Inc.*, 2005 WL 1323364, at *5 (N.D. Ill. May 5, 2005).

8

### 1. Predominance

Although related to the commonality requirement found in Rule 23(a), "the predominance inquiry is far more demanding." *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 301 (N.D. Ill. 2005) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623-24 (1997)). To satisfy the predominance requirement of Rule 23(b)(3), "the plaintiff must show that common issues not only exist but outweigh the individual questions. The common questions must be central to all claims." *Dhamer v. Bristol-Myers Squibb Co.,* 183 F.R.D. 520, 529-30 (N.D. Ill. 1998).

In this case, the common issues of law and fact predominate over issues affecting individual members. Jewel allegedly issued credit or debit card receipts bearing prohibited information to class members in violation of FACTA. Although Jewel argues that there may be potential class members, unlike the named Plaintiffs, who have suffered actual damages as a result of the violation, these issues do not predominate. As explained in *GMAC Mortgage*, if "a few class members' injuries prove to be substantial, they may opt out and litigate independently." 434 F.3d at 953. "Only when all or almost all of the claims are likely to be large enough to justify individual litigation is it wise to reject class treatment altogether." *Id.* (citing *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995)). The focal point of these proceedings will be Jewel's alleged course of conduct in depriving putative class members of their rights under FACTA. This issue certainly predominates over any individual damages issues that might exist.[2] These considerations – joined with those that

---

[2] Jewel also argues that two additional individual questions override the common issues – whether the class members received receipts and whether class members can be considered consumers under the statute. But by definition no one can be a member of the class unless he or she has received a non-compliant receipt and is a consumer. To the extent that Jewel is arguing that the class is not ascertainable because it cannot determine who is a member of the class from its records, that is a matter for discovery, and, given the paper trail in cases like this, records of credit or debit card transactions should be fairly easy for Plaintiffs' counsel to acquire.

led the Court conclude that the commonality requirement of Rule 23(b)(3) had been satisfied – lead the Court to determine that Plaintiffs have satisfied the predominance requirement.

### 2. Superiority

Rule 23(b)(3) also requires a plaintiff to demonstrate that a class action is superior to other available methods of adjudication. "Class treatment is especially appropriate for consumer claims" because these actions often involve common factual and legal questions. *Murray*, 232 F.R.D. at 303. A class action also may be warranted "where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *Id.* Jewel argues that class certification is an inferior method of handling this controversy because Plaintiffs have alleged no actual damage, the size of the class would be too large, and there is no relationship between actual and statutory damages.

"FACTA claims are especially well-suited to resolution in a class action where, as here, 'potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.'" *Matthews v. United Retail, Inc.*, 2008 WL 618960, *5 (N.D. Ill. March 5, 2008) (quoting *GMAC Mortgage*, 434 F.3d at 953). Jewel's primary argument – that a class action is not superior to individual suits because the potentially excessive amount of damages would violate Jewel's due process rights – has been rejected by the Seventh Circuit. In *GMAC Mortgage,* the Seventh Circuit reversed a district court decision that found that the potential liability of the defendant for a FCRA violation – billions of dollars – was an abuse of the class action forum and not superior to individual lawsuits. 434 F.3d at 953. The Court explained that "[t]he reason that damages can be substantial [ ] does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person," without providing a statutory damages cap. *Id.*

(citing 15 U.S.C. § 1681n(a)(1)(A)). Whatever the merits of a potentially immense damage award in comparison to what might be considered a mere technical violation of the FCRA, the Seventh Circuit held that class certification should have been granted because "[w]hile a statute remains on the books, [ ] it must be enforced rather than subverted." *Id.* at 953-54. Furthermore, while an unconstitutionally excessive damages award may be reduced, these constitutional limits are best applied after a class has been certified. *Id.* at 954. Therefore, the potential for a very large damage award cannot affect this Court's Rule 23 analysis.

Jewel also argues that "[t]he Court should refuse to push Jewel into a blackmail settlement by certifying a class." Def. Resp. at 11-12. The Seventh Circuit has observed that "blackmail settlements" can arise in situations where there is "a small probability of an immense judgment in a class action." *In re Rhone-Poulenc Rorer Inc.,* 51 F.3d 1293, 1298 (7th Cir. 1995). As indicated, FACTA provides for the recovery of statutory damages between $100 and $1000 on proof of a willful violation. Jewel has done the math and come up with the following potential scenario. Section 1681c(g), as it pertains to Jewel, went into effect on December 4, 2006. Between December 4, 2006, and May 1, 2007, Jewel's records indicate that it had approximately 1,000,000 Illinois SCOTS lane debit card transactions. Assuming that each customer was a consumer within the meaning of the FCRA, Jewel could face liability of between $100 million and $1 billion for failing to redact credit/debit card expiration dates. The potentially crippling statutory damages would create unbearable pressure on Jewel to settle this lawsuit, and Jewel asserts that "even a minimum damages award would be ruinous, and the maximum award would far exceed Jewel's total net worth." Def. Resp. at 4.

Jewel's reliance on *Rhone-Poulenc* is misplaced, because that case is inapposite on the facts presented here. In *Rhone-Poulenc*, the Seventh Circuit was dealing with a situation where (1) evidence of individual test cases showed that there was a "demonstrated great likelihood that the plaintiffs' claims, despite their human appeal, lack[ed] legal merit"; and (2) individual suits were not "infeasible" because the claim of each class member was not "tiny relative to the expense of litigation." *Id.* at 1299. Additionally, many class members had large claims for actual damages. Here, by contrast, the evidence does not show a "great likelihood" that Plaintiffs' claims lack merit. Also, there is no evidence that the damages claim of each potential class member, individually, would be large enough to sustain individual actions. Rather, for most potential class members, there are no actual damages and the recovery would be "tiny relative to the expense of litigation" on an individual basis.

Moreover, the Seventh Circuit recently held that Rule 23(b)(3) "was designed for situations such as this." *GMAC Mortgage,* 434 F.3d at 953. As set forth earlier, in *GMAC Mortgage,* the Seventh Circuit stated that where "the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate," class certification is the superior method of adjudication. *Id.* at 953. Jewel attempts to distinguish *GMAC Mortgage* on its facts from this case on two grounds: (1) that the defendant in *GMAC Mortgage* sought pecuniary gain, and in this case, Jewel did not benefit from the alleged violation and acted in good faith by trying to eliminate the alleged violation prior to the commencement of the lawsuit, and (2) that here, unlike in *GMAC Mortgage,* Jewel did nothing to target individual class members, and instead simply delivered receipts to the cardholders.

The Court cannot base the certification decision solely on the impact it might have on a party that is alleged to have violated FACTA. Congress did not impose a "pecuniary harm" requirement

12

or create a "good faith" exception that might allow Jewel to escape the consequences of any willful conduct. Moreover, a negligent violation of the statute will not subject Jewel to the kind of damages that it claims would be irreparable. The Court notes that Jewel attempts to have it both ways on this point. On the one hand, in arguing that certifying the class will push Jewel into a blackmail settlement, Jewel says that the stakes of a judgment on liability are too high if the class is certified. For those high stakes to kick in, there would have to be a finding of willfulness on the merits. See 15 U.S.C. § 1681n (only willful violations are entitled to statutory and punitive damages). Thus, for purposes of this argument, Jewel assumes that there is a risk of such a finding – and, correspondingly, a risk of a "blackmail" settlement – if a class is certified. On the other hand, Jewel argues that there is no evidence of willfulness and this case should not be certified as a class. If, as Jewel asserts, there is no evidence of willfulness, then there is nothing with which to blackmail it. See 15 U.S.C. § 1681o (negligent violations are only compensable with actual damages, plus fees and costs).

In any event, the Court is not persuaded that these distinctions make a difference in this case. Jewel argues that it did not benefit from the alleged violation. But FACTA is not designed to prevent the merchant from benefitting. Rather, it seeks to protect the consumer from detrimental exposure to the risk of identity theft. See Financial Data Protection Act of 2006, House Report No. 109-454(1), § (b)(1) (May 4, 2004) ("(b) Findings – The Congress finds as follows: (1) Protecting the security of sensitive information relating to consumers is important to limiting account fraud and identity theft"). Moreover, Jewel ignores the societal benefit it may achieve from class treatment: if Jewel prevails on liability, then that determination will be binding on all class members, and Jewel will not have to worry about others bringing this claim in Illinois. The Seventh Circuit also has

13

suggested something akin to "societal gain" when courts use the most efficient mechanism for determining liability in a case where the individual stakes are likely too small to support individual suits. See *GMAC Mortgage*, 434 F.3d at 953. Based on the foregoing, the Court finds that Plaintiffs have satisfied the superiority requirement of Rule 23(b)(3).

### D. Class Counsel

As a final matter, Plaintiffs ask the Court to appoint counsel for all three Plaintiffs as counsel for the class. Rule 23(g)(1) sets forth several factors that courts should consider in appointing class counsel, including the work counsel has done in investigating potential claims in this action; counsel's experience in handling class actions and the type of claims asserted in this action; counsel's knowledge of the applicable law; and the resources counsel will commit to representing the class. Fed.R.Civ.P. 23(g)(1)(A). According to Exhibit E attached to Plaintiffs' motion for class certification, all of the proposed class attorneys have extensive knowledge of the applicable law and experience handling similar class actions, as well as the resources to investigate the potential class claims. Counsel who regularly pursue similar claims are more likely to appropriately and efficiently serve the class and bring more expertise than less-experienced counterparts. Indeed, Jewel does not contest that class counsel is adequate under Rule 23(g). Based on the representations in counsels' affidavits, the Court finds that the requirements found in Rule 23(g) have been satisfied, and the Court appoints counsel for Plaintiff Cicilline, Daniel Lynch and Oren Giskan, counsel for Plaintiff Iosello, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, and Thomas E. Soule, and counsel for Plaintiff Batterson, Keith J. Keogh and Alexander H. Burke, as class counsel in this case.

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiffs' Motion for Class Certification (DE 45) and denies as moot Plaintiffs' Motion to Cite Additional Authority in Support of Class Certification (DE 76).

Dated: March 31, 2008

Robert M. Dow, Jr.
United States District Judge