# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEPHEN CICILLINE, JR., et al, individually and on behalf of a class, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO.: 07-CV-2333 ) |
| JEWEL FOOD STORES, INC., d/b/a JEWEL-OSCO, a New York corporation, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion for Partial Judgment on the Pleadings as to Affirmative Defenses 16 and 17 (DE 27), filed by Plaintiffs on June 12, 2007. On June 20, 2007, Judge Bucklo, the judge previously assigned to this case, allowed Plaintiffs to file a consolidated complaint and ordered that the motion be treated as a motion on behalf of all Plaintiffs. On November 1, 2007, Judge Bucklo converted the motion into one for summary judgment and allowed the parties additional time to submit Rule 56.1 statements of material facts. The Court has reviewed the parties' briefs and statements, and, for the reasons stated below, the Court grants Plaintiffs' Motion for Partial Judgment on the Pleadings as to Affirmative Defenses 16 and 17.

**I.      Background**

Plaintiffs Stephen Cicilline, Jr., Jeffrey Batterson, and Christopher Iosello[1] allege that Defendant Jewel Food Stores ("Jewel") violated 15 U.S.C. § 1681c(g), a provision of the Fair Credit

---

[1] Plaintiffs have filed a motion for class certification (DE 45), which is currently pending before the Court.

Reporting Act ("FCRA"), as amended by the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"). Section 1681c(g) provides:

> No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

This lawsuit is one of hundreds of nearly identical actions filed against retailers in several states. In this case, each of the named Plaintiffs in this putative class action alleges that he shopped at a Jewel supermarket in Illinois in April or May 2007, made purchases using a credit card, and received a computer-generated receipt which displayed the card's expiration date. Plaintiffs contend that Jewel should not have printed those expiration dates on their receipts because § 1681c(g) requires deletion of that data on all receipts printed after December 4, 2006.

In response to Plaintiffs' complaint, Jewel filed its answer and asserted seventeen affirmative defenses. The final two affirmative defenses, at issue in the instant motion, aver that Plaintiffs' interpretation of § 1681c(g) interferes with Jewel's First Amendment rights by requiring suppression of the card number and expiration date on the customer copy of receipts. In particular, Jewel's sixteenth and seventeenth affirmative defenses state:

> Enforcing Plaintiff's interpretation of 15 U.S.C. § 1681c(g) would interfere with Jewel's First Amendment rights under the United States Constitution as to what information it gives its customers on their receipts by unnecessarily impeding its ability as a retailer to confirm to its customers that the transaction has been appropriately charged.

> Alternatively, if Plaintiff's interpretation of 15 U.S.C. § 1681c(g) is adopted, the means that Congress chose to address identity theft exceeded the governmental interest asserted, and prohibiting the printing of a card expiration date is a more extensive prohibition than is necessary to serve the governmental interest. If 15 U.S.C. § 1681c(g) prohibits printing a card expiration date on a receipt delivered to a consumer which displays only the last four or five digits on the consumer's card, then the statute is unconstitutional under the First Amendment to the United States Constitution.

In essence, Jewel argues that if the statute is construed to require deletion of card expiration dates, then it is unconstitutional under the First Amendment because it prohibits more speech than is necessary to serve the government's interest in deterring identity theft.

**II.     Analysis**

Initially, Plaintiffs' motion was to be viewed under the Rule 12(c) standard, where judgment on the pleadings is appropriate "only when it appears beyond a doubt that [a litigant] cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved * * * * " *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). However, after the parties presented matters outside the pleadings, the Court converted the motion to one for summary judgment. See *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 453 n. 5. Under the summary judgment standard, the moving party must demonstrate that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe. Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

Plaintiffs first argue that the expiration date printed on receipts is not speech at all. Plaintiffs correctly assert that the First Amendment only applies to words or conduct intended to be communicative or expressive. See *Redgrave v. Boston Symphony Orchestra*, 855 F.2d 888 (1st Cir.

3

1988). From this point of law, they contend that there is no apparent communicative or expressive purpose in printing the expiration date, which the person presenting the card already has, on the credit card receipt.

Contrary to Plaintiffs' argument, "words communicating information are 'speech' within the meaning of the First Amendment, *whether or not the words convey important ideas*." *Giebel v. Sylvester*, 244 F.3d 1181, 1186-87 (9th Cir. 2001) (emphasis added) (citing *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996), which held that the First Amendment protects advertisement of liquor prices). "Even dry information, devoid of advocacy, political relevance, or artistic expression, has been accorded First Amendment protection." *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 446 (2d. Cir. 2001). A cash register receipt containing a credit card expiration date conveys information concerning a commercial transaction. When merchants, such as Jewel, deliver receipts to customers, those receipts serve to memorialize the customer's purchases, the source of his payments (cash, credit, debit, or credit card), and other information about the transaction. The receipts in this case confirmed to Plaintiffs what they had purchased, how much each item cost, the transaction date, and what accounts were used to make the purchases. Given the information conveyed by the receipts, each receipt constitutes a deliberate – albeit dry – communication with each Plaintiff and therefore constitutes "speech" within the contours of the First Amendment.

Because the Court has determined that the communications at issue are in fact speech, the communications are protected, at a minimum, under the Supreme Court's commercial speech

jurisprudence.[2] Although the Constitution "accords a much lesser protection to commercial speech than to other constitutionally guaranteed expression," the First Amendment protects commercial speech from unwarranted governmental regulation. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm.*, 447 U.S. 557, 562-63 (1980). In *Central Hudson Gas & Electric Corporation v. Public Service Commission*, the Supreme Court set forth standards for regulating commercial speech. Where "the communication is neither misleading nor related to unlawful activity," the government's power to regulate it is "circumscribed" as follows:

> The limitation on expression must be designed carefully to achieve the State's goal. Compliance with this requirement may be measured by two criteria. First, the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose. Second, if the government interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive.

*Id*. at 564. In sum, "the protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." *Id*. at 563.

Jewel contends that the prohibition on printing expiration dates does not directly advance the state interest involved, is more extensive than necessary to serve the government's interest in deterring identity theft, and provides only ineffective or remote support for the government's purpose. While Jewel agrees that the government has a substantial interest in preventing identity theft, it does not agree that this goal is "directly advanced" by the expiration date restriction. Jewel argues that the restriction does not directly advance the goal because credit card fraud is a separate concern from identity theft. Moreover, Jewel posits that credit thieves cannot fraudulently use a

---

[2] The Supreme Court has defined "commercial speech" as "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm.*, 447 U.S. 557, 561 (1980). Neither Plaintiffs nor Defendant has made an argument that the speech at issue is anything other than commercial speech.

5

debit or credit card if all they learn is the last four digits of a customer's account number and the expiration date. Rather, they would need the entire card number, the expiration date, and, for some transactions, the card valuation code found on the back of credit and debit cards. Jewel also contends that a more limited restriction on speech – for example, truncation of card numbers but not the expiration date – would serve the goal equally well. For all of its arguments, Jewel relies primarily upon expert Joel Lisker's opinions and, specifically, his opinion that "the fact that plaintiffs' credit or debit cards expiry date was printed on their receipts did not expose plaintiffs to any risk of harm * * * * " Lisker Decl. ¶ 5.

Congress has rejected Jewel's first argument – that the printing of an expiration date on a payment card receipt has no relation to identity theft because credit card fraud is a separate concern from identity theft. See Def. Resp. at 4. As another court in this district has observed, "Congress enacted FACTA with the intent of helping to prevent the possibility of thieves stealing the identity of another by obtaining one's credit card number and the expiration date of that credit card." *Iosello v. Leiblys, Inc.*, 502 F.Supp.2d 782, 786 (N.D. Ill. 2007). When a thief attempts to make a purchase using someone else's credit card, the thief is holding himself out as someone else. One common scheme of identity thieves is to collect lost or discarded credit card receipts and/or credit card statements and use the information on them to engage in fraudulent transactions. Identity thieves who do this are known as "carders" and "dumpster divers." Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," *Wall Street Journal*, Oct. 5, 2006 at B1. This is more common than the use of sophisticated electronic means to obtain the information. *Id.* Testimony prior to the enactment of FACTA showed that the most common sources of information for identity thieves were theft from mails and

garbage. Theft from the person or through burglary also featured prominently. Testimony of Mari J. Frank Before the House Government Reform Committee, May 15, 2003; Testimony of Alice S. Fisher, Deputy Assistant Attorney General, Criminal Division, Before the Senate Special Committee on Aging, July 18, 2002. Congress obviously found this testimony persuasive and acted accordingly in enacting the various provisions of FACTA. As recently stated by the Seventh Circuit, "[m]aybe suits such as this will lead Congress to amend the Fair Credit Reporting Act; maybe not. While a statute remains on the books, however, it must be enforced rather than subverted." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953-54 (7th Cir. 2006). Therefore, Jewel's argument that FACTA's prohibitions have no relation to identity theft would be better suited before Congress.

Jewel next contends that the expiration date restriction does not directly advance FACTA's purported goal because credit thieves cannot fraudulently use a credit card if all they have is the last four digits of the card number and the expiration date. Although possession of the receipt with only part of the credit card number and the expiration date alone would not be enough to commit fraud, the prohibition materially advances the goal of reducing consumer fraud by denying potential thieves information necessary to complete the fraudulent use of consumer's credit and debit card accounts. Although Mr. Lisker, in his Declaration, opined that the expiration date on receipts does not expose consumers to any risk of harm, his deposition testimony belies this assertion. When asked by Plaintiffs' counsel if a thief who obtained both a monthly credit card statement (which would have the account number) and a receipt with an expiration date could use that information to commit fraud, Lisker agreed. Lisker Dep. at 60:13 – 61.2. As articulated by the court in *Iosello*:

> Businesses generally require one's credit card number and the expiration date of that credit card to transact business. Access to both the credit card number and the expiration date of that credit card makes it easier for a thief to commit identity theft. The existence of a law prohibiting the printing of more than the last five digits of the

> credit card number makes it difficult for a thief to obtain the victim's credit card number. The existence of a law prohibiting the printing of the expiration date of a credit card makes it even more difficult to commit identity theft.

502 F.Supp.2d at 786. Thus, the redaction of a credit card's expiration date serves as an added safeguard against identity theft and the fraudulent use of credit and debit card.

Likewise, the redaction of expiration dates does not offend the requirement that the legislation be narrowly tailored. A properly tailored restriction "focuses on the source of the evils that the [government] seeks to eliminate * * * and eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (quoting *United States v. Albertini,* 472 U.S. 675, 689 (1985). The Supreme Court has stated that "the requirement of narrow tailoring is satisfied 'so long as the * * * regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Id*.

As the court in *Trans Union Corporation v. Federal Trade Commission*, 245 F.3d 809, 818 (D.C. Cir. 2002) enounced, "[W]e have no doubt that this interest – protecting the privacy of consumer credit information – is substantial." Here, the evil is the disclosure of information that can be used by thieves to commit identity theft or credit card fraud. Section 1681c(g) attempts to thwart the evil by requiring merchants/retailers to make an adjustment to machines which print the receipts. The harm to the consumer? None, because the consumer can identify, based on the last four digits of the card number printed on the receipt, which card was used. The harm to the merchant/retailer? The time that it takes to program its card machines and devices to comply with FACTA.[3] The

---

[3] At this point, Jewel has not provided any evidence that this undertaking is too burdensome.

8

particular provision of FACTA at issue does not restrict any other information or communication. Jewel has not disclosed what feasible alternatives exist that would not expose the consumer to the harm sought to be prevented. The only information suppressed is private financial data that can be used by a criminal to engage in identity theft and credit card fraud. Jewel has not demonstrated, and the Court cannot envision, a way in which the government can "promote its interest (protection of personal financial data) except by regulating speech because the speech itself (dissemination of financial data) causes the very harm the government seeks to prevent." *Trans Union LLC v. Federal Trade Commission*, 295 F.3d 42, 53 (D.C. Cir. 2001).

Jewel's final argument is that Section 1681c(g) is ambiguous and should be construed so as to avoid the construction that merchants must delete card expiration dates from receipts. As set forth earlier, § 1681c(g) provides that no merchant " * * * shall print more than the last 5 digits of the card number or the expiration date upon any receipt * * * * " Jewel argues that there are two equally plausible interpretations of this language: (1) that neither more than five digits nor the expiration date may be printed, or (2) that no more than five digits and/or the expiration date may lawfully be printed.

It appears that every other district court in the country to have addressed this issue has rejected Jewel's contention. See, *e.g.*, *Follman v. Hospitality Plus of Carpentersville, Inc.*, 2007 WL 3052962 (N.D. Ill. October 17, 2007); *Iosello v. Leibly's, Inc.,* 502 F.Supp.2d 782 (N.D. Ill. 2007) (holding that § 1681c(g) is not vague or ambiguous); *Arcilla v. Adidas Promotional Retail Operations, Inc.,* 488 F.Supp.2d 965 (C.D. Cal. 2007) (same); *Aeschbacher v. California Pizza Kitchen, Inc.,* 2007 WL 1500853 (C.D. Cal. Apr. 3, 2007) (same); *Pirian v. In-N-Out Burgers,* 2007 WL 1040864 (C.D. Cal. Apr. 5, 2007) (same); *Lopez v. The Gymboree Corp.,* 2007 WL 1690886

(C.D. Cal. June 8, 2007) (same); *Korman v. The Walking Co.,* 503 F.Supp.2d 755 (E.D. Pa. 2007) (same). As the court stated in *Iosello*,

> [T]he plain language of Section 1681c(g) has only one reasonable meaning * * * * The plain meaning of the statute is that a merchant shall not print more than the last 5 digits of the credit card number upon any receipt *and* a merchant shall not print the expiration date upon any receipt. In other words, a retailer must print no more than five digits of a card number, and a retailer must also remove the expiration date from the credit card receipt. Printing either more than five digits of the credit card number or the expiration date of the credit card violates Section 1681c(g).

502 F.Supp.2d at 786. That also is the position of the Federal Trade Commission, which reminded businesses to conform their receipts to the new law, as follows:

> According to [FACTA], the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date. For example, a receipt that truncates the credit card number and deletes the expiration date could look like this * * * *

"FTC Reminds Businesses Law Requires Them to Truncate Credit Card Data on Receipts," May 30, 2007, http://www.ftc.gov/bcp/edu/pubs/business/alerts/alt007.shtm. This Court concurs with its sister courts and the Federal Trade Commission and finds that the text of 15 U.S.C. § 1681c(g) is clear and open to only one reasonable interpretation.

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiffs' Motion for Partial Judgment on the Pleadings as to Affirmative Defenses 16 and 17 (DE 27).


Dated: March 31, 2008               _____
                                    Robert M. Dow, Jr.
                                    United States District Judge